**Application of FRANKLIN PRESS, INC.**

**Appeal No. 79–512.**

United States Court of Customs and Patent Appeals.

April 26, 1979.

Abraham Bogorad, Robert G. McMorrow, Washington, D. C. (Sughrue, Rothwell, Mion, Zinn & Macpeak, Washington, D. C.), attorneys of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Edward E. Kubasiewicz, Alexandria, Va., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NICHOLS,* Judges.

BALDWIN, Judge.

This is an appeal from the decision of the Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (board) affirming the refusal to register appellant's service mark. We reverse.

### Background

Appellant has applied to the PTO for registration of the following mark:

The registration application claimed use of this mark in connection with printing services since August 9, 1976. Appellant disclaimed any rights to the expressions "Employees Represented by ITU, IPPU & GCU,

& GAIU," "Press," "Inc.," and "Baton Rouge, La." apart from their use in the mark as shown.

During the examination of the application, the PTO examiner stated that a search of the files of registered marks failed to show that the mark, when used in connection with appellant's services, so resembled any other registered mark as to be likely to cause confusion, mistake or deception. Registration of the mark was refused, however, on the basis that the phrase indicating employee union memberships was informational and must be deleted, not merely disclaimed. Appellant, being of the opinion that deletion of this phrase was unwarranted in view of the disclaimer, and that deletion of the phrase would change the commercial impression of the mark, appealed to the board.

Before the board, appellant argued that under the rationale in *Beckwith v. Comm'r of Patents*, 252 U.S. 538, 40 S.Ct. 414, 64 L.Ed. 705 (1920), disclaimer of the phrase in question was more appropriate than deletion because deleting the phrase would result in registration of a mark which differed both from the mark actually used in commerce and from the specimens filed with the application. Also, appellant reiterated that deleting the phrase would change the commercial impression of the mark.

### Board Opinion

The board stated that the disclaimer practice approved by the Court in *Beckwith, supra*, was incorporated in section 6 of the Trademark Act of 1946, 15 U.S.C. § 1056, as follows:

(a) The Commissioner may require the applicant to disclaim an unregistrable component of a mark otherwise registrable. An applicant may voluntarily disclaim a component of a mark sought to be registered.

(b) No disclaimer, including those made under paragraph (d) of section 7 [15 U.S.C. § 1057] of this Act, shall prejudice or affect the applicant's or registrant's

---

* Honorable Phillip Nichols, Jr., Judge, United States Court of Claims, sitting by designation.

rights then existing or thereafter arising in the disclaimed matter, or his right of registration on another application if the disclaimed matter be or shall have become distinctive of his goods or services.

According to the board, the subject matter of a disclaimer is normally a descriptive term barred from registration under section 2(e) of the statute, 15 U.S.C. § 1052(e), and arbitrary terms such as those in the phrase in question are not properly disclaimed. The board continued by stating that it is "inimical to the proprietary rights" of the owner of a trademark to have such mark incorporated into a registered composite mark of another even if the incorporated mark is disclaimed by the registrant of the composite mark.

Turning its attention to the mark before it, the board stated that the phrase in question is purely informational and that the commercial impression of the mark would not be affected if the phrase was deleted. Also, the board noted that the particular phrase in question is not merely descriptive, geographically descriptive, or a surname under section 2(e), 15 U.S.C. § 1052(e). The board concluded its opinion as follows:

[A] different situation pertains where a party seeks *to register* someone else's mark even where such use is deemed to be a "fair" use. What about the injury to the owner of said mark? *The registration thereof* without the consent or control of the owner is obviously contrary to the fundamental function of a trademark and the proprietary rights therein possessed by the owner. A disclaimer does not alleviate the situation, first because a disclaimer in the common and popular concept thereof may suggest that the term is nonregistrable, per se, and therefore places a cloud on the mark, and secondly disclaimers "slumber in the archives of the Patent Office" because purchasers are neither aware of them nor of their significance. And, as indicated in *In re Hercules Fasteners, Inc., supra.*

"The purpose of a disclaimer is to show that the applicant is not making claim to the exclusive appropriation of such matter <u>except in the precise relation and association in which it appeared in the drawing and description</u> . . . ." [Underlining added] [By the board]

In conclusion, it is our opinion not only that the mark sought to be registered without the phrase in question would not be a distortion or mutilation of the mark as used, but that since the phrase contains proprietary indicia of origin of parties other than applicant, *the registration thereof* as a part of a composite mark would be inimical and contrary to the rights of ownership possessed therein by these parties notwithstanding the disclaimer thereof by applicant. The disclaimer tends to obfuscate and becloud the rights of the owners of these insignia and thereby attempts to subvert the purpose for which the disclaimer practice was adopted.

Accordingly, we hold the requirement for deletion of the phrase "EMPLOYEES REPRESENTED BY ITU, IPPU & GCU, & GAIU" to be proper. [Emphasis ours except as indicated.]

### Appellant's Arguments

In its brief before this court, appellant argues that even though the phrase in question is informational, its deletion materially changes the mark and its commercial impression. Further, registration of the mark with the phrase deleted would result in registration of a mark which had not actually been used in commerce. Finally, appellant states that the truthful nature of the phrase in question obviates the possibility of harm to the interests of any third parties should the composite mark, including the disclaimed phrase, be registered.

### Solicitor's Arguments

The solicitor, in his brief, argues that the phrase in question merely informs ppellant's customers that its services are performed by members of certain labor organizations. Since the expression does not serve to identify and distinguish appellant's

services from the services of others, the solicitor contends that the expression must be deleted from the mark sought to be registered. Further, it is argued that it is inappropriate for appellant to disclaim a term when another party has a proprietory interest in the term. Finally, the solicitor distinguishes *Beckwith, supra,* from the case at hand by noting that the disclaimed phrase in *Beckwith* was descriptive and, thus, inherently unregistrable, whereas appellant's phrase is not clearly descriptive and not necessarily unregistrable.

## OPINION

As a helpful prelude to determining the propriety of the PTO's requirement of deletion of the phrase "Employees Represented By ITU, IPPU & GCU, & GAIU" from appellant's mark as a condition for registration, certain trademark principles and facts found in the record will be reviewed.

First, it is clear that appellant's common law rights in the composite mark as used in commerce will remain unaffected without regard to deletion or disclaimer of the phrase in question or to the procurement of a federal registration. *See Victor Tool & Machine Corp. v. Sun Control Awnings, Inc.,* 299 F.Supp. 868, 162 USPQ 389 (E.D.Mich.1968), *aff'd per curiam,* 411 F.2d 792, 162 USPQ 387 (6th Cir. 1969); E. Vandenburgh, *Trademark Law & Procedure* § 2.10 (2d ed. 1968). It is beyond the powers of the PTO and of this court to prevent appellant's use of its composite mark.

Second, appellant has properly exercised its rights as provided by the second sentence of section 6(a) of the Lanham Act, 15 U.S.C. § 1056(a), by voluntarily disclaiming, in its registration application, the subject phrase and other descriptive portions of its composite mark. The role of disclaimers within the law of trademarks was stated by this court in *In re Hercules Fasteners, Inc.,* 203 F.2d 753, 757, 40 CCPA 944, 948, 97 USPQ 355, 357 (1953), to be the following:

> The purpose of a disclaimer is to show that the applicant is not making claim to the exclusive appropriation of such matter except in the precise relation and association in which it appeared in the drawing and description.

The effect of a disclaimer is to disavow any exclusive right to the use of a specified word, phrase, or design outside of its use within a composite mark. *See U. S. Steel Corp. v. Vasco Metals Corp.,* 394 F.2d 1009, 55 CCPA 1141, 157 USPQ 627 (1968); *Shwarzkopf v. John H. Beck, Inc.,* 340 F.2d 978, 52 CCPA 957, 144 USPQ 433 (1965); *In re Hercules Fasteners, Inc., supra.*

Another fact worthy of note is contained in a letter from the PTO examiner to the appellant stating, in part, the following: "A search of the Office records fails to show that the mark, when applied to applicant's goods and/or services, so resembles any registered mark as to be likely to cause confusion, or to cause mistake, or to deceive." Thus, it is apparent that in view of the information before it, the PTO had found no grounds for refusing registration of the composite mark under sections 2(d), 2(e) and 3 of the Lanham Act, 15 U.S.C. §§ 1052(d), 1052(e) and 1053, respectively.[1]

---

1. Section 2 of the Lanham Act provides, in pertinent part:

> *Trademarks registrable on principle register; concurrent registration*
>
> No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—
>
> \* \* \* \* \* \*
>
> (d) Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive \* \* \*.
>
> (e) Consists of a mark which, (1) when applied to the goods of the applicant is merely descriptive or deceptively misdescriptive of them, or (2) when applied to the goods of the applicant is primarily geographically descriptive or deceptively misdescriptive of them, except as indications of regional origin may be registrable under section 1054 of this title, or (3) is primarily merely a surname.

Section 3 of the Lanham Act provides for registration of service marks as follows:

> *Service marks registrable*

■ In view of these factors, the question before us becomes whether the PTO properly refused registration of the composite mark by *sua sponte* asserting whatever proprietary rights the labor organizations have in their marks which were incorporated into appellant's composite mark.[2] There is but one answer, and that is if the registration that appellant seeks is indeed inimical to the labor organizations' proprietary interests in their designations, then the burden is on the labor organizations to oppose the registration. The PTO determined that appellant's composite mark, when used in connection with its printing services, would not cause confusion, mistake or deception. To refuse registration of appellant's mark with its attendant disclaimers in the light of this determination would strike an unequal balance between the appellant's right to register the mark and whatever proprietary rights the labor organizations have in their respective designations.

The solicitor cites *General Electric Co. v. The Chase-Shawmut Co.*, 133 USPQ 341 (TTAB 1962), as support for requiring appellant to delete rather than merely disclaim the subject phrase from its registration application. In this case, the applicant (Chase-Shawmut) sought registration of a composite mark which included the disclaimed designation "Current Limiting Fuses (CLF)." General Electric opposed the registration based upon its prior trademark use of "CLF" for high interrupting capacity low voltage fuses. The TTAB sustained the opposition on the following basis:

> Subject to the provisions relating to the registration of trademarks, so far as they are applicable, service marks used in commerce shall be registrable, in the same manner and with the same effect as are trade-marks, and when registered they shall be entitled to the protection provided in this chapter in the case of trade-marks, except when used so as to represent falsely that the owner thereof makes or sells the goods on which such mark is used.

2. Since the labor organizations are not parties to this action, we are without knowledge concerning the nature and extent of any trademark use of their respective designations. Further, there is no indication within the record that those organizations would be adverse to the registration which appellant seeks.

The record is not convincing that the designation "CLF" is a generally recognized abbreviation for "current-limiting fuses". Opposer, in view of its prior and continuous use of "CLF" on its fuses, has a proprietary interest in said designation and a registration of a mark including that term even with a disclaimer thereof, would manifestly abrogate opposer's rights therein.

Rather than supporting the broadbrush rule that disclaiming the mark of another which appears within the composite mark of an applicant for registration is insufficient to protect the proprietary interests of the owner of the disclaimed mark, this case supports placing the burden on the owners of marks to take appropriate action via oppositions or cancellation proceedings to police their own marks.[3] In the instant appeal, the PTO has been unable to articulate what exclusive rights, if any, the labor organizations have in their designations. Similarly, the PTO has not shown what harm, if any, will be done to the proprietary rights of these organizations if appellant is permitted to register its mark with the subject phrase disclaimed. The parties that can best supply the answers to these questions are the labor organizations, and until they appear and oppose, there is no reason to require deletion of the phrase from the composite mark.

■ The solicitor alternatively seeks to support deletion of the phrase on the basis

3. Such an opposition occurred in *Seiler's, Inc. v. Hickory Valley Farm, Inc.*, 139 USPQ 460 (TTAB 1963), where opposer (Seiler's, Inc.) which owned registrations for the mark "Penn Dutch" opposed applicant's (Hickory Valley Farm, Inc.) application for registration of a composite mark that included the words "Penn Dutch." Applicant had disclaimed "Penn Dutch" but the board sustained the opposition because it determined a likelihood of confusion existed in view of the goods of the parties. The disclaimer was viewed as being of no consequence in avoiding such confusion. This situation is in obvious contrast to the appeal before us where the PTO has found no likelihood of confusion to exist.

that it does not serve to distinguish appellant's services from the service of others.[4] The simple answer to that contention is that it is the composite mark *including* the disclaimed portions which distinguishes appellant's services. There is no requirement that every individual feature of a composite mark be arbitrary or distinctive.

■ Finally, the PTO and appellant have diametrically opposed opinions as to the effect deletion of the phrase in question would have on the overall commercial impression of the mark. Faced with a similar disagreement in *Beckwith, supra*, the Supreme Court stated the following:

> The commercial impression of a trademark is derived from it as a whole, not from its elements separated and considered in detail. For this reason it should be considered in its entirety (*Johnson v. Brandau, supra* [32 App.D.C. 348]) and to strike out any considerable part of it, certainly any conspicuous part of it, would be to greatly affect its value. Of course, refusal to register a mark does not prevent a former user from continuing its use, but it deprives him of the benefits of the statute, and this should not be done if it can be avoided by fair, even liberal, construction of the act, designed as it is to promote the domestic and foreign trade of our country. [252 U.S. at 545-6, 40 S.Ct. at 417.]

Thus, it would appear that whenever no harm to the public or other trademark owners has been shown to be likely to occur, a disclaimer of subject matter in a composite mark unregistrable to the applicant should be preferred to deletion thereof because this preferred procedure permits registration of a composite mark in the same form as that used in commerce.

■ Referring to the quotation from the board opinion, *supra*, we also point out that registration of a composite mark does not constitute *registration of* matter expressly disclaimed therefrom.

The decision of the board is *reversed*.

*REVERSED*

4. Whether identifying that particular services are performed by union labor distinguishes such services from those performed by non-un-

ion labor is an issue which this court need not resolve.