ASSOCIATION OF CO–OPERATIVE
MEMBERS, INC.,
Plaintiff-Appellant,

v.

FARMLAND INDUSTRIES, INC.,
Defendant-Third Party
Plaintiff-Appellee,

v.

Elmer GIBSON, Third Party
Defendant-Appellant.

No. 81–1260.

United States Court of Appeals,
Fifth Circuit.

Sept. 3, 1982.

Rehearing Denied Oct. 4, 1982.

John C. Stahl, San Antonio, Tex., for plaintiff-appellant.

Patton G. Lochridge, Austin, Tex., for defendant-third party plaintiff-appellee.

Before WISDOM, POLITZ and TATE, Circuit Judges.

WISDOM, Circuit Judge:

This is an appeal from an interlocutory order granting partial summary judgment in favor of Farmland Industries, Inc. (Farmland) and its wholly owned subsidiary, Farmland Life Insurance Co. (Farmland Life), on their trademark infringement claim against the Association of Co-operative Members, Inc. (Association) and Elmer Gibson.[1] In their appeal, Gibson and the Association raise several issues over which this Court does not exercise appellate jurisdiction, and to that extent, we dismiss the appeal. Finding, with respect to the remaining issues, that there are no disputed questions of material fact and that the district court's disposition was sound in law, we affirm.

### I. Statement of the Case

The background to this case and most of the basic facts are undisputed. Farmland submitted numerous affidavits and deposition excerpts in support of its motion for partial summary judgment, and neither Gibson nor the Association filed affidavits disputing the contents of Farmland's filings. Our summary of the background and undisputed facts therefore relies heavily on Farmland's sworn submissions to the district court.

Farmland is a cooperative organization, owned and controlled by the 2,300 local farmers' cooperative associations throughout the country that make up its membership. It provides a full line of goods and services to its members and attempts to supply all the basic needs of the farming community. Among the services Farmland provides its members is insurance, which it sells through Farmland Life.

Since 1958, Farmland has used the "double circle" mark, pictured below, in connection with the goods and services it provides. The mark has appeared on Farmland's advertising, stationery, annual reports, buildings, and labels, although Farmland has obtained neither a state nor a federal registration of it. Farmland has spent millions of dollars, more than 45 million dollars in the past decade alone, on advertising associated with the mark. People throughout the area in which Farmland operates associate the mark with Farmland exclusively.

---

1. The precise nature of Gibson's relationship, if any, with the Association is not clear from the record. The respective roles of Gibson and the Association in the activities giving rise to Farmland's claim are described at p. 4434, *infra*.

Farmland is a member of Universal Cooperatives, Inc. (Universal), which holds various registrations for trade and collective marks consisting of or including the word "CO–OP". Universal's by-laws permit its members, including Farmland, to use its marks. It is Farmland's relationship with Universal that, according to Gibson and the Association, raises disputed questions of material fact. Farmland claims the right to include the word "CO–OP" in its mark by virtue of Universal's by-laws. The appellants, however, relying on a statement by counsel for Farmland at the district court hearing, argue that Farmland's right to use Universal's marks derives from a licensing agreement. The appellants also maintain that Universal owns the double circle format used by Farmland, and they have submitted copies of several of Universal's trademark registration and renewal applications, which include reproductions of this mark as specimens. Farmland maintains that Universal has registered only the word "CO–OP" and that the registration and renewal applications included the double circle only as an example of the use of "CO–OP".

The Association is a corporation organized, according to its pleadings, "to promote the general interests of members of co-operatives and also promote agricultural interests". To solicit membership, the Association mass-mailed letters to residents of rural communities in Texas, advertising insurance as well as membership. The letters and envelopes bore the Association's logo, reproduced below. The Association and Gibson, who handled the mass mailing, were apparently aware of Farmland's use of the double circle. Farmland has submitted affidavits of several consumers who were misled by the Association's logo and responded to the mailing in the belief it was from Farmland.

The mailings contained forms that consumers who were interested could complete and return. Gibson sold these responses to General Life and Accident Insurance Co. (General) for $18.50 each, and General agents then called on those who responded. The agents tried to sell both insurance and membership in the Association. Consumers choosing to join the Association subsequently received catalogues bearing its logo and advertising farm and household supplies and equipment that the Association would sell to its members. Much of the merchandise was of the same type Farmland markets.

In April 1979, Farmland learned of the Association's activities and wrote the Association and General, notifying them of what it considered a trademark infringement and demanding that they cease using the infringing logo. In May 1979 the Association filed for registration of its trademark in several states, including Texas, and sued Farmland in state court in Texas, alleging fraud, restraint of trade, and defamation.

Farmland removed the action to the United States District Court for the Western District of Texas, relying for subject matter jurisdiction on diversity of citizenship. Farmland then moved to dismiss and, with Farmland Life, filed a counterclaim against the Association and General for trademark infringement. In December 1980, Farmland and Farmland Life amended their counterclaim, suing the Association, Gibson, and Gibson's alleged alter-ego, Associated Agencies, Inc., for trademark infringement under Texas law, false representation and false designation of origin under § 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a), false procurement of trademark registrations, and unjust en-

richment.[2] Farmland sought injunctive relief, cancellation of any registrations of the infringing trademark, damages, and attorney fees.

Early in 1981, Farmland and Farmland Life moved for partial summary judgment, as did the Association. The district court denied the Association's motion and granted that of Farmland and Farmland Life. The court held that Farmland owns a common law trademark in the double circle and that the Association and Gibson had willfully and intentionally infringed it. It enjoined the Association and Gibson from using or registering any logo likely to cause confusion with Farmland's trademark and ordered them to deliver to the court for destruction all materials bearing the infringing logo and to withdraw and cancel any application to register a logo infringing Farmland's trademark. The court also found that the actions of Gibson and the Association amounted to "false representation and designation of origin in connection with goods and services placed in the stream of commerce" and that they had fraudulently procured trademark registrations. On these grounds, as well as that of trademark infringement, the court awarded Farmland and Farmland Life damages and attorney fees. In addition, the court cancelled existing registrations of the Association's infringing trademarks and ordered Gibson to account to Farmland and Farmland Life for profits attributable to the use of infringing logos. The district court withheld consideration of the measure of damages and of the Association's defamation claim pending our disposition of this appeal.

The appellants, Gibson and the Association, argue that Farmland's rights in the double circle do not amount to a common law trademark but are dependent on Farmland's relationship with Universal, and that this relationship is subject to disputed questions of material fact. They also argue that Universal is a necessary party to this litigation. As we discuss below, we find these arguments without merit. In their reply brief, the appellants argue, in addition, that a disputed question of material fact exists concerning the willfulness of any infringement they committed and that Farmland Life is not entitled to relief because it does not own a common law trademark in the double circle. As to these issues, our appellate jurisdiction is doubtful. To the extent we may have appellate jurisdiction of these issues, we decline to exercise it and dismiss the appeal. We discuss appellate jurisdiction first.

## II. Appellate Jurisdiction

■ Farmland does not dispute the right of Gibson and the Association to appeal from the district court's interlocutory order. At the hearing on Farmland's motion for partial summary judgment, the parties apparently agreed not to raise the question of appellate jurisdiction. Neither waiver nor agreement of the parties, however, can confer jurisdiction we otherwise lack, and this Court has frequently considered the issue of appellate jurisdiction on its own motion. *E.g., Oswalt v. Scripto*, 5 Cir. 1980, 616 F.2d 191, 192; *United States v. Beasley*, 5 Cir. 1977, 558 F.2d 1200 (per curiam). Since we have serious doubts about the appealability of parts of the district court's order, it is appropriate to consider the question.

■ Our inquiry centers on 28 U.S.C. § 1292(a)(1), which gives the Courts of Appeals jurisdiction of appeals from "[i]nterlocutory orders ... granting ... injunctions".[3] Since the order appealed from

**2.** When it amended its counterclaim, Farmland moved to dismiss General from the case. The district court granted the motion.

**3.** We have also considered the applicability to this case of 28 U.S.C. § 1292(b), which gives this Court discretion to permit appeal from an interlocutory order if the district judge is "of the opinion that such order involves a controlling question of law as to which there is sub-

stantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation". At the hearing on Farmland's motion for partial summary judgment, the district court stated its intention to permit an appeal. Section 1292(b), however, applies only if the district court has certified in writing that the criteria for appealability of an interlocutory order are met. *United States v. Beasley*, 5 Cir.

granted an injunction, § 1292(a)(1) is applicable on its face. Appellate review under § 1292(a)(1), however, ordinarily extends only to those parts of an interlocutory order that relate to the grant of an injunction. *Teamsters Local Union 745 v. Braswell Motor Freight Lines, Inc.*, 5 Cir. 1970, 428 F.2d 1371, 1373 & n.3, *cert. denied*, 1971, 401 U.S. 937, 91 S.Ct. 926, 28 L.Ed.2d 217; 11 C. Wright & A. Miller, Federal Practice & Procedure § 2962 at 629–30 (1973); 16 *id.*, § 3921 at 16 (1977). *But see Myers v. Gilman Paper Corp.*, 5 Cir. 1977, 544 F.2d 837, *cert. dismissed*, 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59. The district court's order in this case awarded monetary as well as injunctive relief and, accordingly, granted summary judgment on some questions that have no bearing on the issuance of a permanent injunction. Some of these questions are not before us and thus present no problem of appellate jurisdiction. To the extent the appellants raise others of these questions, however, we dismiss their appeal, without prejudice as to those issues in case of an appeal from final judgment.

The restriction of appellate review to the injunctive aspects of the district court's order has been described both as a jurisdictional limitation, *Teamsters Local Union 745*, 428 F.2d at 1373, and as a rule of judicial administration, *Western Electric Co., Inc. v. Milgo Electronic Corp.*, 5 Cir. 1978, 568 F.2d 1203, 1208, *cert. denied*, 439 U.S. 895, 99 S.Ct. 255, 58 L.Ed.2d 241. We need not decide which of these characterizations is the more apt. To the extent we

1977, 558 F.2d 1200 (per curiam); *Cobb v. Chevron U.S.A., Inc.*, 5 Cir. 1977, 558 F.2d 236 (per curiam). Since the district court has provided no such certification, § 1292(b) cannot serve as a basis for jurisdiction of the appeal.

4. Farmland asserts a claim for trademark infringement only under Texas law. Although federal law does recognize a cause of action for trademark infringement, 15 U.S.C. § 1114(1), relief is available only to owners of federally registered trademarks, *see El Chico, Inc. v. El Chico Cafe*, 5 Cir. 1954, 214 F.2d 721, 724 (quoting *Pecheur Lozenge Co. v. National Candy Co.*, 1942, 315 U.S. 666, 667, 62 S.Ct. 853, 853–54, 86 L.Ed. 1103, 1104–05 (per curiam)). As noted above, *see* p. 1135, *supra*, Farmland has not registered the double circle.

may have power to consider issues that do not pertain directly to the injunction granted in this case, we decline to exercise it.

■ We thus do not consider Farmland's federal claim under § 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a). Section 43(a) establishes a cause of action for "false designation of origin". This Court has held that infringement of an unregistered trademark can constitute a violation of § 43(a) and that injunctive relief is available in such a case, if the plaintiff shows that the unregistered trademark is "so associated with its goods that the use of the same or similar marks by another company constitutes a representation that its goods come from the same source". *Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 5 Cir. 1975, 510 F.2d 1004, 1010 (quoting *Joshua Meier Co. v. Albany Novelty Mfg. Co.*, 2 Cir. 1956, 236 F.2d 144), 1013, *cert. denied*, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98; *see also* 1A R. Callman, Unfair Competition, Trademarks, & Monopolies § 5.04 (4th ed. 1981). Although the district court determined that Gibson and the Association had committed "false representation and designation of origin", however, it expressly made this determination a basis only for monetary relief and did not rely on it in deciding to issue an injunction. We therefore consider the appeal only to the extent that it calls into question the district court's disposition of Farmland's state-law claims.[4] This conclusion does not require dismissal of any part

Farmland's claim for false procurement of trademark registration under Texas law was part of the basis for monetary relief but was not mentioned in the injunctive portion of the district court's order. False registration was, however, the ostensible basis for the district court's cancellation of the Association's registrations. We need not decide whether this form of relief would be considered injunctive for purposes of appellate jurisdiction, because the appellants have not raised any issues that relate to the cancellation remedy specifically. All the issues on which we affirm the district court concern the injunction based on trademark infringement, whether or not they also concern cancellation of the Association's registrations.

of the appeal, because the appellants have not raised any issues relating specifically to the federal claim. It does, however, have the important effect of requiring us to decide all the issues before us only by reference to Texas law. *See El Chico, Inc. v. El Chico Cafe*, 5 Cir. 1954, 214 F.2d 721, 724.

■ The appellants raise two issues over which we do not exercise jurisdiction. First, they challenge the district court's determination that their infringement of Farmland's mark was willful and intentional. The appellants argue that they ceased to use the infringing logo as soon as Farmland notified them of its position and that the question of willfulness is thus in dispute. The appellants have referred us to no authority, however, that a showing of willfulness is a condition of injunctive relief in an action for infringement of a common law trademark, and the Texas authority is to the contrary. *See Western Grocer Co. v. Caffarelli Bros.*, Tex.Civ.App. 1908, 108 S.W. 413, 414, *rev'd on other grounds*, 1908, 102 Tex. 104, 127 S.W. 1018; *cf.* Tex.Bus. & Com.Code Ann. §§ 16.26(a), (b) (Vernon 1968) (same for registered trademarks). We therefore dismiss the appeal to the extent it challenges summary judgment on the question of willfulness.

We similarly dismiss the appeal insofar as it concerns the relief granted Farmland Life. The appellants argue that Farmland Life has never used the double circle and therefore cannot claim a common law trademark in it, even if Farmland itself can. The district court, however, did not find that Farmland Life has a common law trademark in the double circle, and its finding that Farmland itself does own a trademark (which we affirm below) is sufficient to justify the injunction. We do not consider whether the award of monetary relief to Farmland Life would be appropriate.

Having delineated the scope of our jurisdiction as we exercise it in this case, we now turn to those issues that fall within it: whether Farmland owns a common law trademark in the double circle and whether Universal is a necessary party to the action.

### III. Farmland's Rights in the Double Circle

The central question in this case is whether Universal's rights in its registered trade and collective marks affect Farmland's right to claim a common law trademark in the double circle. The appellants do not dispute that Farmland's appropriation and use of the double circle are sufficient, absent any conflicting rights in Universal, to establish ownership of a common law trademark. Nor do they deny that the Association's logo is likely to be confused with Farmland's and would be an infringement if Farmland owned the trademark. They argue, rather, that Farmland cannot claim a common law trademark in the double circle, because Universal owns it and licenses it to Farmland. They also argue that Universal's ownership and registration of the trademark "CO–OP", which is a prominent element of Farmland's double circle, preclude Farmland from claiming a common law trademark. We reject both arguments.

■ The appellants have neither established that Universal owns a trademark in the double circle nor put the question sufficiently in dispute to withstand a motion for summary judgment. In support of their position, the appellants submitted to the district court certified copies of several applications by Universal and its predecessor, National Cooperatives, Inc., for federal registration and renewal of trademarks in the word "CO–OP". These applications include, among the specimens of "CO–OP", Farmland's double circle. To show that Universal claims rights in the double circle, the appellants have also submitted a copy of a complaint Universal filed against the Association in the United States District Court for the District of Columbia in 1979. The complaint alleged that the Association's logo, at issue here, infringed Universal's trademark. But these submissions do not sustain the appellants' position. Registration or renewal concerns only the mark registered and does not extend to the specimens submitted with an application. The inclusion of the double circle among differ-

ent specimens creates no presumption that Universal owns a trademark in it.[5] And Universal's complaint in the District of Columbia alleged infringement only of the word "CO–OP"; it did not claim any rights in the double circle.

The appellants' filings, although they cannot establish that Universal owns the double circle, might, standing alone, be enough to put the matter in dispute. But Farmland has countered the appellants' contentions with the sworn affidavit of Floyd E. Grabiel II, a Universal official "personally familiar with and responsible for Universal's trademarks". Grabiel's affidavit states that "Universal has no claim and makes no claim to Farmland's Double Circle trademark. With regard to Farmland's Double Circle trademark, Universal claims ownership of only the word 'COOP'." The affidavit also states that the double circle format was included in renewal and registration applications only as a specimen and not as the subject of any trademark registration. Since the appellants have submitted no sworn statement disputing Grabiel's ability to speak authoritatively on Universal's position, and their filings can be explained consistently with Grabiel's affidavit, those filings do not put any material question of fact in dispute. Universal makes no claim to the double circle, and Farmland's use of the mark cannot be subject to a license by Universal.

The question we are left with, then, is whether Farmland's inclusion in its mark of a prominent element it concedes to belong to Universal prevents it from asserting a valid common law trademark in the entire composite. As we have observed, *see* p. 1138–1139, *supra,* Farmland's infringement

claim is governed by state law, and we must decide the issue as a Texas court would. The Texas courts have apparently not had occasion to consider the question. We conclude, however, that they would adhere to the general common law principles that other courts have uniformly applied. *See Blue Bell, Inc. v. Farah Manufacturing Co.,* 5 Cir. 1975, 508 F.2d 1260, 1264.

■ The whole, in trademark law, is often greater than the sum of its parts. Common words in which no one may acquire a trademark because they are descriptive or generic may, when used in combination, become a valid trademark. *E.g., In re Colonial Stores, Inc.,* 1968, 394 F.2d 549, 55 CCPA 1049; *Scientific Applications v. Energy Conservation Corp.,* N.D.Ga.1977, 436 F.Supp. 354, 360; *National Trailways Bus System v. Trialway Van Lines, Inc.,* E.D.N. Y.1963, 222 F.Supp. 143, 145. *See also* 1 J. Gilson, Trademark Protection and Practice § 2.02[5] (1982). Similarly, a mark containing such words can be appropriated as a trademark if they are "part of an arbitrary or fanciful design or device". *Estate of Beckwith v. Commissioner of Patents,* 1920, 252 U.S. 538, 541, 40 S.Ct. 414, 415, 64 L.Ed. 705, 706. *Cf. Quabaug Rubber Co. v. Fabiano Shoe Co.,* 1 Cir. 1977, 567 F.2d 154 (color alone cannot constitute valid trademark, but color in combination with distinctive shape can). As the Supreme Court has said, "The commercial impression of a trademark is derived from it as a whole, not from its elements separated and considered in detail. For this reason it should be considered in its entirety ...." *Beckwith,* 252 U.S. at 545–46, 40 S.Ct. at 416–17, 64 L.Ed. at 708 (citation omitted).

5. The appellants submitted to the district court copies of one application for registration (No. 872,627) and two applications for renewal (Nos. 357,727 and 537,472). The application in No. 872,627 included five specimens, but the appellants submitted a copy of only one, a facsimile of the double circle. The application itself does not refer to the double circle, and we cannot assume that the specimens the appellants have chosen not to introduce all consisted of the double circle. The application for renewal of No. 357,727 included numerous specimens consisting of the word "CO–OP" in different designs and cannot be taken as evidence of a trademark in any one of these designs. The renewal application in No. 537,472 included only one specimen, a facsimile of Farmland's double circle. But the right of renewal extends only to the original registered mark, *see Ex parte Richards, Comm'r Pat.* 1967, 153 U.S.P.Q. 853, 854, not to any specimen used in the renewal application. The appellants have produced no evidence that the mark originally registered in No. 537,472 included the double circle.

This principle is not restricted to composites including descriptive or generic elements but extends to a mark that, like Farmland's, contains an element that cannot itself belong to the user of the composite because it belongs, or might belong, to someone else. In *In re Franklin Press, Inc.*, Cust. & Pat.App.1979, 597 F.2d 270, the Court of Customs and Patent Appeals allowed registration of the applicant's composite mark, which included the words "Employees Represented By ITU, IPPU & GCU, & GAIU". The applicant had, pursuant to § 6 of the Trademark Act of 1946, 15 U.S.C. § 1056, disclaimed any interest in this language apart from its use in the composite mark. The Trademark Trial and Appeal Board of the Patent and Trademark Office (PTO) had upheld an examiner's decision finding the disclaimer insufficient to render the mark registrable and refusing to register the mark unless the language was deleted. The Board found that "since the phrase contain[ed] proprietary indicia of origin of parties other than applicant, the registration thereof as a part of a composite mark would be inimical and contrary to the rights of ownership possessed therein by these parties". 597 F.2d at 272. The Court of Customs and Patent Appeals reversed the Board's decision, holding that the applicant's disclaimer of the phrase in question adequately addressed the Board's concerns. The court found that the PTO had not shown what harm registration of the mark would cause the proprietary rights of the labor organizations named in the disputed phrase. The court held that the PTO lacked power to assert the unions' rights *sua sponte* and that those rights could be asserted only by the affected unions in an opposition to the registration. *Id.* at 274.

Several grounds might be advanced for distinguishing the present case from *Franklin Press*, but none persuades us that the principle of that case is inapplicable here. First, the court in *Franklin Press* noted that the examiner had expressly found that the mark in question did not "so resemble[ ] any registered mark as to be likely to cause confusion ...". *Id.* at 273. The district court in the present case did not determine that Farmland's double circle is unlikely to be confused with Universal's registered trademark. The appellants, however, have not established, or even argued, that Farmland's trademark is invalid because it so resembles Universal's. They argue only that inclusion of Universal's mark in the composite double circle automatically renders the latter invalid as a trademark. *Franklin Press* establishes that inclusion of another's mark in a composite does not automatically preclude trademark status and does not of its own force establish likelihood of confusion. *See also Armstrong Cork Co. v. World Carpets, Inc.*, 5 Cir. 1979, 597 F.2d 496, 501–04, *cert. denied*, 444 U.S. 932, 100 S.Ct. 277, 62 L.Ed.2d 190; 3 R. Callman, Uniform Competition, Trademarks, & Monopolies § 82.1(g) at 656 (3d ed. 1969).[6]

In this connection, we note that the word "CO–OP" in Farmland's mark is obviously more prominent than the disputed language in *Franklin Press*. If "CO–OP" is the dominant element of Farmland's trademark, its inclusion might be enough to render the latter invalid as an infringement of Universal's rights. *See* 3 Callman, *supra*, § 82.1(g) at 656–57. The appellants, however, have not established that the "CO–OP" element so dominates the double circle, and visual prominence alone does not make an element dominant. The dominant element of a trademark is the element most readily associated with the products or services it identifies. *Id.* at 659–60. And when a composite includes both words and a design, the design element is likely to dominate if it is

6. Our holding on this point is narrow. We conclude only that the appellants' legal arguments in this case do not establish that Farmland's mark so resembles Universal's as to be invalid. We need not decide whether Universal (if it sought to) could show, by means, for example, of evidence of actual confusion on the part of consumers, that the double circle does in fact infringe on its registered mark. Neither need we now consider what effect Universal's by-laws or any license of the word "CO–OP" to Farmland, if one exists, would have on such a showing.

more conspicuous or well known to the purchasing public. *See Crown Overall Mfg. Co. v. Chahin*, W.D.Tex.1951, 96 F.Supp. 805, *aff'd*, 5 Cir. 1953, 200 F.2d 935; *Caffarelli Bros. v. Western Grocery Co.*, 1908, 102 Tex. 104, 127 S.W. 1018; 3 Callman, *supra*, § 82.1(g)(4) at 703–05. It is thus significant that, as Farmland has established by uncontradicted affidavits, the farming community associates the double circle design with Farmland, and Farmland members are known by the words "double circle". More important, the appellants' own filings in this case (specifically, exhibits 4–8 to their original complaint) establish that the word "Co-op" is widely used as a trademark in numerous industries and thus that it is a relatively "weak" mark. *See* 1 J. Gilson, Trademark Protection and Practice § 2.01 at 2–3 (1982). A word that may be subject to lessened trademark protection because of its popularity and lack of distinctiveness [7] is not likely, when included in a composite, to be the element that attracts the public's attention. *Cf. Sun Banks of Florida, Inc. v. Sun Federal Savings and Loan Assoc.*, 5 Cir. 1981, 651 F.2d 311, 317 (because the word "sun" is commonly used by Florida businesses, its inclusion in the trademarks of two banks does not create confusing similarity). In the light of these considerations, we cannot hold that "CO–OP" is the dominant element of Farmland's trademark.

It might also be argued that the procedure for opposition to trademark registration, by which the unions could have protected their interests in *Franklin Press*, is unavailable in a common law infringement action. But it is obvious from the affidavits filed in this case that Universal has known of Farmland's double circle for years and that it recognizes Farmland's common law trademark rights in it. Moreover, because Universal is not a party in this case, nothing we decide would preclude it from asserting, in a future infringement action against Farmland, that Farmland's mark is likely to cause confusion with its own.[8]

Finally, the applicant in *Franklin Press* had, pursuant to § 6 of the Trademark Act of 1946, formally disclaimed the language in question, apart from its use in the mark to be registered. By contrast, no statute specifically provides for any such formal disclaimer in the present infringement action. But while disclaimer may be required for registration, it cannot be a condition of common law rights in a trademark. As the court stated in *Franklin Press*, "common law rights in the composite mark ... remain unaffected without regard to ... disclaimer of the phrase in question ...". 597 F.2d at 273. More fundamentally, however, Farmland has effectively disclaimed any rights in the word "CO–OP" apart from its use in the double circle. Its filing of the Grabiel affidavit, which claims those rights for Universal, is sufficient disclaimer for all practical purposes.

We thus conclude that the presence of Universal's registered mark in Farmland's composite does not defeat the latter's validity as a common law trademark. This is so whether Farmland uses the word "CO–OP" by virtue of Universal's by-laws or by virtue of a licensing agreement; it would be so if the relationship between Farmland and Universal consisted of nothing more than the latter's failure to prosecute a successful infringement action against the former. Thus, even if the appellants have succeeded in raising a disputed question of fact concerning Farmland's authority to use "CO–OP", the question is not material.[9]

---

7. *See* 3 Callman, *supra*, § 82.1(b) at 755–56.

8. We need not decide whether the Grabiel affidavit filed in this case might result in an estoppel against Universal on such a claim. *See* note 10, *infra*. Whatever the legal effect of the affidavit, our decision in this case does not enhance it. What matters for present purposes is that, if Universal is precluded from raising this claim, that preclusion does not result from any holding in this case.

9. We consequently find unpersuasive the appellants' argument that the licensee estoppel doctrine prevents Farmland from claiming common law rights in the double circle. The doctrine precludes the licensee of a mark from asserting rights in it contrary to those of the licensor. *See* 3 Callman, *supra*, § 78.2 at 454 (3d ed. 1969); 1 J. Gilson, Trademark Protection and Practice § 6.03[7] (1982). The appellants have referred us to no case, however, in which the doctrine operated in favor of anyone

## IV. Universal as a Necessary Party

The appellants argue that Universal is a necessary party to this action and that partial summary judgment for Farmland without the joinder of Universal was error. The appellants' argument rests, however, on the premise that Farmland licenses the double circle from Universal, a premise we have rejected, *see* pp. 1139–1140, *supra*. We thus find no error in the district court's granting of partial summary judgment in the absence of Universal.

 The licensor of a trademark is usually treated as a necessary or indispensible party in an infringement action by its licensee. *Pure Food Products, Inc. v. American Bakeries Co.*, N.D.Ill.1972, 176 U.S.P.Q. 233. Sound reasons support this rule. Even if Farmland's use of the word "CO–OP" is under license from Universal, however, those reasons do not apply in this case because no rights in the word "CO–OP" itself are in dispute.

Rule 19(a)(2), Fed.R.Civ.P., requires joinder of a party if

> he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.[10]

The licensor of a trademark that is the subject of an infringement action by a licensee falls squarely within the language and policy of this rule. As owner of the mark, the licensor has a legally protected interest in the subject matter of the action. *See* 3A J. Moore & J. Lucas, Moore's Federal Practice ¶ 19.07–1[2] at 19–129, ¶ 19.14[2.-–2] at 19–276 (1982); 7 C. Wright & A. Miller, Federal Practice & Procedure § 1614 at 154–55 (1972). A judgment for the alleged infringer, whether based on a finding that the licensed mark is not a valid trademark or that the defendant's mark does not infringe it, may prejudice the licensor's rights in his own mark. A judgment for the plaintiff-licensee could result in double obligations for the defendant, should the licensor subsequently sue on his own.

 This is not the case where, as here, the rights asserted in the trademark derive not from a license agreement but from the common law. It is irrelevant that the mark is a composite, an element of which belongs to a third party and might be the subject of a license agreement. In the present case, Universal claims no rights in the double circle. A judgment for Gibson and the Association would not prejudice Universal's rights in its registered marks; it would only deny Farmland the right to prevent the Association from using the allegedly infringing logo.[11] Judgment for Farmland will not subject the appellants to multiple or inconsistent obligations, since Universal

other than the licensor, and our research has led us to no case in which a third party invoked it. *See id.* § 8.12[10]. More fundamentally, we have already established that the double circle does not belong to Universal, and Universal therefore cannot have licensed it to Farmland. Since Farmland claims no rights in Universal's mark, "CO–OP", apart from its use in the double circle, it asserts no rights inconsistent with Universal's.

**10.** Clause (1) of rule 19(a) is clearly inapplicable. It requires joinder of a party if "in his absence complete relief cannot be accorded among those already parties". The appellants have not attempted to show, nor can we see, how Universal's absence from the case could affect the district court's ability to grant the relief Farmland has sought.

**11.** This conclusion is especially appropriate in the present case. Because Farmland's composite includes a prominent element that belongs to Universal, it might be argued that a determination that the Association's logo does not so resemble Farmland's as to cause confusion creates a presumption that it does not so resemble Universal's mark either. The appellants do not dispute the resemblance between the Association's mark and Farmland's, however, *see* p. 1139, *supra*, and a judgment for the appellants could thus be based only on a finding that Farmland lacks a valid trademark. Obviously, a judgment on this basis could not have any bearing on Universal's rights in its marks.

does not claim ownership of the infringed trademark.[12]

### CONCLUSION

The district court's determination that Farmland owns a common law trademark in the double circle rested on no disputed factual question. That an element of the composite mark might have been the subject of a license agreement is irrelevant to this determination. The district court also acted properly in granting partial summary judgment without requiring the joinder of Universal in the action. The district court's findings that the infringement in this case was willful and intentional and that Farmland Life was damaged by the appellants' actions, however, were not necessary to the grant of injunctive relief. Review of these findings is therefore beyond the scope of the appellate jurisdiction we exercise under 28 U.S.C. § 1292(a)(1).

For these reasons, the appeal is DISMISSED IN PART, and the order of the district court is AFFIRMED IN PART.

**12.** We are mindful that Universal, although claiming no interest in the double circle, might sue the Association on the theory that its logo infringes the simple mark "CO–OP" as well as Farmland's composite. Universal apparently raised precisely this claim in its 1979 complaint in the District of Columbia. *See* pp. 1139–1140, *supra.* It is possible, however, that Universal's position on this claim has changed or that Universal would be estopped to make it. According to affidavits filed in the present action, Universal recognizes Farmland's common law trademark. This recognition entails the concession that Farmland's mark does not infringe Universal's. In view of the similarity between the Association's mark and Farmland's, Universal may be unable to argue successfully that one infringes while the other does not.

We need not decide, however, whether Universal may have any rights against the present appellants. We now review only the grant of injunctive relief and the determination of issues necessary to the issuance of an injunction. *See* pp. 1137–1138, *supra.* The injunction in this case would not impose inconsistent obligations on the appellants, even if Universal could obtain a similar injunction or recover damages.