Patricia HAGAMAN

v.

HASBRO, INC.

Civ. A. No. G–88–17.

United States District Court,
S.D. Texas,
Galveston Division.

April 28, 1989.

Gerson Bloom, Galveston, Tex., for plaintiff.

Jay Brown, Beirne, Maynard & Parsons, Houston, Tex., and Kim J. Landsman, Morrison & Foerster, New York City, for defendant.

## ORDER

HUGH GIBSON, District Judge.

Before the Court is defendant's motion for summary judgment and the plaintiff's response.

### A. *Background Facts*

The plaintiff Patricia Hagaman has brought a trademark infringement action against the defendant Hasbro, Inc., claiming trademark rights in a children's toy that she has named "Wristimals." A "Wristimal" is a small stuffed animal with a timepiece attached, which is worn around the wrist like a watch. The plaintiff claims she conceived of the idea for "Wristimals" in January 1985.

The defendant Hasbro has an employee who, also in January of 1985, conceived of an idea for a plush animal wrist watch that Hasbro eventually decided to call a "Watchimal."

Both plaintiff and defendant pursued their conceptions to varying degrees. The defendant produced its idea for nationwide distribution, while the plaintiff constructed two prototypes. Upon plaintiff's discovery of the defendant's mass production of its "Wristimals," she brought action against Hasbro for the infringement of what she claims was her exclusive trademark.

One month after the plaintiff conceived of her Wristimals idea, she solicited overseas manufacturers for the production of the toy by sending out six letters, along with drawings of various animals, to Phillipine manufacturers. None of the manufacturers answered her inquiries, and plaintiff never sought another manufacturer. While she was waiting to hear from the manufacturers, Mrs. Hagaman worked on a prototype of her idea. By piecing together parts of several stuffed animals and a ball, she created a Wristimal skunk. Plaintiff gave this prototype to her two and a half-year old niece.

Meanwhile, Hasbro had been working on its Watchimals, and after displaying its Watchimal toy line to various retailers and at toy shows, Hasbro shipped its first set of Watchimals to customers in Texas in early January 1986. Shortly thereafter, plaintiff learned that Hasbro was advertising and selling the Watchimals throughout Texas.

Plaintiff called her attorney at the time, Carl Davis, to discuss what she perceived as Hasbro's infringement. Mr. Davis told the plaintiff that he could not represent her in any lawsuit and her failure to market a Wristimal product was fatal to her claim.

Plaintiff then retained another attorney, Vernon Harrison, who filed a petition in the Matagorda County District Court. (This case was removed and is the one now before the Court.) This petition alleged that the sale by Hasbro of its Watchimals toy wristwatch infringed on plaintiff's Wristimal trademark, which had "become widely known" as a "result of the continued sale by plaintiff of 'Wristimals' under the trademark since March, 1985." (Plaintiff's Original Complaint, ¶¶ II, VI.) (As plaintiff later admitted, she has never made a single sale.)

Following a round of discovery, attorneys for the parties engaged in several discussions of the merits of plaintiff's action. On April 5, 1988, Hasbro's counsel sent plaintiff's attorney, Mr. Harrison, a letter explaining the invalidity of plaintiff's claim in light of the relevant case law and plaintiff's responses to the discovery requests. Mr. Harrison subsequently withdrew from the action.

In late 1988, plaintiff retained another attorney, Gerson Bloom, who represented plaintiff during her deposition on December 21, 1988. Following that deposition Hasbro's counsel again requested that plaintiff withdraw her lawsuit. Plaintiff's counsel refused and defendants filed their motion for summary judgment.

### B. Applicability of Texas Trademark Statute

■ The initial question before the Court is what body of law applies to the plaintiff's cause of action. The plaintiff argues her case under the federal trademark statute—the Lanham Act—without stating why she believes the Lanham Act is applicable. The defendant argues that the Texas trademark statute (Tex.Bus. & Com. Code Ann. §§ 16.01–16.28 (Vernon's 1987)) is applicable, not the Lanham Act, because the plaintiff never distributed the Wristimal in interstate commerce.

This Court finds that the Lanham Act is not applicable. However, the reason it is inapplicable to plaintiff's cause of action is because the plaintiff never registered her trademark. The Fifth Circuit has written, "Although federal law does recognize a cause of action for trademark infringement, relief is available only to owners of federally registered trademarks." *Association of Co–Op. Members v. Farmland Indus.*, 684 F.2d 1134, 1138 (5th Cir.1982) (citations omitted). In its opinion, the Fifth Circuit cites an earlier opinion of its own that concluded, "Federal courts have original jurisdiction over actions arising under the Lanham Act. In the absence of federal registration, however, state law controls infringement and unfair competition claims." *See El Chico, Inc. v. El Chico Cafe*, 214 F.2d 721 (5th Cir.1954).

Thus, federal jurisdiction here is correctly predicated upon diversity of citizenship, and the law to be applied to the case is the Texas trademark statute.

## C. *Recovery Under the Texas Trademark Statute*

To recover on a trademark infringement claim, the plaintiff initially must demonstrate that she owns a trademark under Texas law. To determine whether plaintiff has done so, this Court looks to *Blue Bell, Inc. v. Farah Mfg. Co.,* 508 F.2d 1260 (5th Cir.1975). The Fifth Circuit was the first appellate court summoned to interpret the then recently enacted trademark statute. In its explication of the statute, the Fifth Circuit states, "[a] trademark is a symbol ... adopted and used by a merchant to identify his goods and distinguish them from articles produced by others. Ownership of a mark requires a combination of both appropriation and use in trade." *Id.* at 1264–65. Thus, plaintiff's success in the lawsuit requires proof of both appropriation and priority of use. Conversely, where this Court finds that no reasonable trier of fact could find for plaintiff on one or both of those elements, the defendant may be successful on its motion for summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

Section 16.02 of the Texas trademark statute defines use as follows:

A mark is considered to be used in this state in connection with goods when:

(1) it is placed on

  (a) the goods;

  (b) containers of the goods;

  (c) displays associated with the goods; or

  (d) tags or labels affixed to the goods; and

(2) the goods are sold, displayed for sale, or otherwise publicly distributed in this state.

Tex.Bus. & Com.Code Ann. § 16.02 (Vernon 1987).

The defendant concedes for the purpose of the motion for summary judgment that plaintiff placed the Wristimal trademark on one prototype in February or March 1985. Plaintiff admits, however, that she has never sold, displayed for sale, or publicly distributed goods with her claimed trademark. Hasbro, on the other hand, first displayed for sale its Watchimals in July 1985.

By applying a literal interpretation of the trademark statute to these facts, then, it seems clear that plaintiff will be unable to establish a priority of use in her idea. This Court nevertheless is further assisted in the construction of the "use" term by *Blue Bell,* where the Fifth Circuit adopted earlier explanations of "use." *Blue Bell* states that trademark protection requires "use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark...." *Blue Bell,* 508 F.2d at 1266, citing *New England Duplicating Co. v. Mendes,* 190 F.2d 415, 418 (1st Cir.1951). Further, the Fifth Circuit notes that previous courts have directed that an "internal" use cannot give rise to trademark rights. *Blue Bell,* 508 F.2d at 1266.

So, applying the case law to these facts similarly would lead to the conclusion that plaintiff will be unable to establish priority of use. By producing only two prototypes—one for the niece and one for the attorney for purposes of litigation—the plaintiff cannot be said to have used her trademark in a way "sufficiently public to identify or distinguish the marked goods" as described in *Blue Bell.* At most, plaintiff appears to have established "internal" use. Perhaps her family members and close friends recognized the plush animal wristwatch as "Hagaman's" trademark. The Fifth Circuit has mandated, however, that such internal use cannot give rise to trademark rights.

An analogy of the facts in *Blue Bell* with the facts at hand lend additional support to defendant's grounds for summary judgment. In *Blue Bell* two manufacturers of a similar line of men's garments became involved in a dispute over priority of use of the name of the garment line—"Time Out." The defendant contended that its shipment of the "Time Out" garments to its twelve regional sales managers, who paid for the goods, constituted a valid sale, display for sale, or other public distribution of the

"Time Out" mark within the meaning of the Texas trademark statute.

The Fifth Circuit rejected this argument. It held that although the shipment to the sales managers was technically a sale, the shipment was not a public distribution "within the purview of the Texas statute." *Blue Bell*, 508 F.2d at 1267. The defendant had not achieved "sufficiently public" use through its shipments to its regional sales managers. "Sufficiently public" use occurred only when the defendant began shipping products to its customers.

Shipping a product to retail managers who pay for the product is an advanced step in the marketing and distribution chain. Before a product reaches such a point, knowledge about the product and its name has already been circulated quite a bit, if not in the consumer arena, at least in the retailer realm. Yet the Fifth Circuit found that even a stage advanced as that did not meet or surpass the "public distribution" test the Texas statute calls for.

Mrs. Hagaman's "distribution" of her Wristimals falls shorter still than the distribution of the "Time Out" line to the twelve regional managers. Mrs. Hagaman's idea was still in the infancy stage when Hasbro introduced its product into the stores. Mrs. Hagaman would have had to have advanced her idea to a much further point before the idea could be recognized as fitting the use definition.

In her response to defendant's motion for summary judgment, the plaintiff asserts that the defendant has not proved that she in fact abandoned her trademark, a defense under the Lanham Act. But as discussed earlier in this order, the Lanham Act does not apply here. The plaintiff cites a district court opinion from the Second Circuit that suggests that unregistered marks are protected under the federal law. *See Silverman v. CBS, Inc.*, 666 F.Supp. 575 (S.D.N.Y.1987). The Fifth Circuit, however, has clearly stated otherwise. Further, the opinion plaintiff cites held that the Lanham Act protected an unregistered mark ("Amos and Andy") that was already associated with a registered mark (the "Amos and Andy" Show). Here, Mrs. Ha-

gaman's idea did not have a connection with a similar idea she had previously registered. Even if the Second Circuit's pronouncement were the law in the Fifth Circuit, Mrs. Hagaman's case might be distinguishable on that basis.

The Texas trademark statute would be the only source of relief for the plaintiff. Because plaintiff has not "used" the "Wristimal" mark in a manner proscribed under § 16.02 of the statute such that she might gain protection of her trademark, she will be unable to establish trademark infringement. Accordingly, defendant's motion for summary judgment will be granted.

It is ORDERED, ADJUDGED and DECREED that defendant's motion for summary judgment is GRANTED.