THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
March 5, 2013

UNITED STATES PATENT AND TRADEMARK OFFICE

\_\_\_\_\_

Trademark Trial and Appeal Board

\_\_\_\_\_

*In re White Jasmine LLC*

\_\_\_\_\_

Serial No. 77115548

\_\_\_\_\_

Tricia L. Schulz of Foley & Lardner LLP for White Jasmine LLC.

Christine C. Martin, Trademark Examining Attorney, Law Office 104 (Chris Doninger, Managing Attorney).

\_\_\_\_\_

Before Holtzman, Bergsman and Adlin, Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

White Jasmine LLC ("applicant") filed a use-based application to register on the Principal Register the mark WHITE JASMINE and design, shown below, for "beverages made of tea; black tea; flavourings of tea; spice blends; spices," in Class 30.



Applicant has acknowledged that its goods contain neither white tea, nor white jasmine, and has claimed that the term "White Jasmine" has acquired distinctiveness.

The Trademark Examining Attorney refused registration on the following grounds:

1.     The word "White" in the mark is deceptive under Section 2(a) of the Trademark Act of 1946, 15 U.S.C. § 1052(a); and

2.     The term "White Jasmine" must be disclaimed under Sections 2(e)(1) and 6 of the Trademark Act because the term "White Jasmine" as used by applicant is either deceptively misdescriptive, and without acquired distinctiveness, or generic.

The examining attorney submitted the following evidence, which demonstrates that WHITE JASMINE refers to a type of tea, and that this type of tea is made of white tea, scented or flavored with jasmine:

1.     *ShipshewanaShops.com* website advertising the sale of Asian Jasmine White Tea.[1]

> Asian Jasmine White Tea
>
> Tea Name:    Asian Jasmine White Tea (White Tea Collection).

2.     *Shopwiki.com* website advertising the sale of White Jasmine Tea, including Choice Organic White Jasmine Tea, Flowering Teas White Jasmine, Asian White Jasmine, and Jasmine White Tea.[2]

---

[1] September 16, 2008 Office action.

3.      *MyVitaNet.com* website advertising the sale of White Tea – Jasmine (*i.e.,* Choice Organic White Jasmine Tea).[3]

4.      *ChoiceOrganicTeas.com* website "Organic White Teas" webpage.[4]  The webpage describes white teas as follows:

> White teas are the least processed of all teas.  Tender buds and leaves are hand plucked, gently withered, and dried.  This minimal handling results in the characteristic light and delicate flavor.

The webpage also identifies "White Jasmine Tea" as follows:

> We marry specially plucked organic white tea leaves and buds with ambrosial jasmine-scented green tea to create a delicate and sweet cup with mild hints of fragrant flowers.[5]



---

[2] September 16, 2008 Office action.

[3] September 16, 2008 Office action.

[4] August 31, 2009 Office action.

[5] *See also* the *Amazon.com* website advertising the sale of Choice Organic White Jasmine Tea (June 18, 2007 Office action and September 8, 2010 Office action) and *Cooks'Nook.com* website webpage advertising CHOICE ORGANIC White Jasmine Tea (August 31, 2009 Office action).  The webpage describes the product as follows:

> Choice Organic White Jasmine Tea is the result of specially-plucked organic white tea leaves with jasmine scented organic green teas to create a delicate and sweet cup with mild hints of fragrant flowers.

5.    *FoodLocker.com* website webpage advertising ARGO White Jasmine Tea.[6]



6.    *ChinaStore.radio86.com* website webpage advertising "White Jasmine Spring Bud."[7]

> Our White Jasmine Spring Bud tea was harvested from the mountain areas of Fujian province in the spring of 2007.  Made only from the most tender leaves, it is one of the best varieties of white jasmine tea.

7.    *GoldenStarTea.com* website webpage advertising Golden Star White Jasmine Sparkling Tea, "a unique beverage that invites you to change your expectations about how you enjoy tea."[8]  This product was reviewed in January 7, 2009 issue of *The New York Times*:  "It's made from organic white jasmine tea."[9]

8.    *Etsy.com* website advertising the sale of "White Jasmine Tea – All Organic," and displaying a depiction of a package of "White Jasmine Tea" whose label lists "white peony tea" and "jasmine buds" among the product's ingredients.[10]

---

[6] August 31, 2009 Office action.
[7] August 31, 2009 Office action.  Although the prices are listed in pounds, the website indicates that the online retailer ships product worldwide.
[8] August 31, 2009 Office action.
[9] Trademark Examining Attorney's Supplemental Brief.  *See also* the article posted on the *SFGate.com* website (January 1, 2009) reviewing the Golden Star White Jasmine Sparkling Tea.  (March 5, 2010 Office action).
[10] September 8, 2010 Office action.



9.  *Pure-Essential-Oils.us* website advertising the sale of jasmine tea, including white jasmine tea.[11]  (Emphasis added).

> Jasmine Tea Collection
>
> When tea is processed in the presence of right-blooming flowers, the delicate sweet aroma infuses each tea leaf. We've created a jasmine tea collection that will delight jasmine tea enthusiasts: jasmine pearl, jasmine green and jasmine white.
>
> Also known as Dragon Phoenix pearl tea, our jasmine oolong pearls combine delicate and unopened buds which delight all the senses as they unfurl while steeping.  Our jasmine green uses top quality whole leaf tea to create a highly flavored green tea.  The distinctive silver needle white is the basis of ***white jasmine*** tea.

10.  An article posted on the *BrightHub.com* website (July 31, 2009).[12]

(Emphasis added).

> Health Benefits of Jasmine Tea
>
> \*      \*      \*
>
> Jasmine tea is made from tea leaves (green, oolong, white, or black) that have been flavored with jasmine flowers.

---

[11] September 8, 2010 Office action
[12] August 31, 2009 Office action.

* * *

Preparing Jasmine Tea

Green jasmine tea …

Oolong jasmine tea …

***White jasmine tea***:  Bring water temperature to 185° F, pour 1 cup of water over 2 teaspoons of loose leaf, cover, steep 5-8 minutes, and strain.

Black jasmine tea …

* * *

Green and white jasmine teas are best for iced tea. …

11.   An article posted in the *FoodsEditorials.com* website.[13]  (Emphasis added).

Tea:  How is Jasmine Tea Different From Other Teas?

* * *

So, if you're in the market for jasmine tea, which should you choose?

* * *

Jasmine Green Tea?  …

Oolong Jasmine Tea?  …

***White Jasmine Tea***?  The combination of light and sweet tea with fragrant jasmine makes for a very delicate flavor.  As white tea gains popularity in the Western world, it's likely that white jasmine tea will become easier to find.  Because white tea, like green tea, is unfermented, you'll gain the same health benefits from drinking white tea that green tea provides.

Black Jasmine Tea? …

---

[13] August 31, 2009 Office action.

12.    Another article posted on the *FoodEditorials.com* website entitled "Tea:  Drinking Jasmine Tea."[14]  (Emphasis added).

> Jasmine tea is the most popular variety of flavored tea. This is in part because Jasmine has been used to scent and flavor every variety of tea:  white, black, green and oolong.  So, no matter what your preference in tea, there is a Jasmine tea for you.

> *        *        *

> While the majority of jasmine tea is green tea, there are also quite a few white and oolong jasmine teas.  White tea, in particular, lends itself quite well to being combined with jasmine because both offer a sweet and subtle flavor and fragrance.

> *        *        *

> Jasmine tea, particularly, green and ***white jasmine teas***, are also wonderful for iced tea.

13.    An article posted on the *Tea-Brewery.com* website entitled "Why Jasmine Tea is Different from Other Tea."[15]   (Emphasis added).

> In the Fujian Province of China, the highest quality Jasmine tea is grown.  The leaves in this location are extremely large and they are the most heavily scented.  In fact, because the leaves are so loose, whether loose green tea, loose black tea, loose oolong tea, or loose white tea, they have the ability to absorb the fragrance of the Jasmine petals [sic] than tea grown anywhere else in the world.

> *        *        *

> Jasmine Green Tea …

> Oolong Jasmine Tea …

> ***White Jasmine Tea***

---

[14] March 21, 2010 Office action.
[15] September 8, 2010 Office action.

Another popular type of Jasmine tea uses white tea as the base, giving the tea a light and delicate flavor and soothing aroma. Interestingly, because white tea is only produced once a year and there are few growers, it is considered rare. Therefore, quality white tea is a little more challenging to find and it is the most expensive tea sold.

For over 700 years, white tea was consumed only in Asian countries and for special occasions such as formal tea ceremonies. However, this type of tea is now very popular in westernized countries. Because of growing consumer demand, finding good white tea is a little more difficult to find. This type of tea is also unfermented, meaning it has a high level of antioxidants and very little caffeine just like green tea does.

Black Jasmine Tea …

14.     An article posted on the *Buzzle.com* website (May 26, 2007).[16]

(Emphasis added).

Ordering Jasmine Tea Online

Most tea drinkers have tried some form of jasmine tea at one time or another. And, most love at least one variety of jasmine tea. However, there are so many varieties of jasmine tea that it may take you some time to try them all! Jasmine tea is created by blending just bloomed jasmine petals with fine loose tea. The result is an incredible fragrance and a sweet flavor.

\*          \*          \*

So, while you're ordering, be sure to sample the many flavors that can be found in jasmine tea.

Jasmine Green Tea …

Oolong Jasmine Tea …

***White Jasmine Tea*** – The combination of light and sweet white tea with a fragrant jasmine makes for a very

---

[16] August 31, 2009 Office action.

delicate flavor. This is one tea that even most non tea drinkers can enjoy. And, white tea carries all the health benefits of green tea. White tea is the rarest of all teas, so white jasmine tea may be a bit more difficult to find than other jasmine teas.

Black Jasmine Tea …

15. An article posted on the *Buzzle.com* website (June 7, 2007).[17]

(Emphasis added).

Tea: Grading Jasmine Tea

What makes jasmine tea so wonderful is its special blend of high quality loose tea leaves with jasmine petals. The jasmine petals impart a delicate yet very aromatic fragrance and a slightly sweet flavor to the tea.

Jasmine tea is the most popular flavored tea in the world. The first jasmine tea was produced in China and made from green tea. Today, however, jasmine flowers are used to scent teas from all over the world, in black, white, green and oolong varieties.

What makes jasmine tea so wonderful is its special blend of high quality loose tea leaves with jasmine petals. The jasmine petals impart a delicate yet very aromatic fragrance and slightly sweet flavor to the tea.

\* \* \*

So, understanding how the jasmine tea you're considering is graded really means understanding how the tea variety that the jasmine tea is made from is graded. Here are some examples to help make it easier to understand.

Black Tea …

Green Tea …

Oolong Tea …

White Tea

---

[17] June 18, 2007 Office action.

> White tea's grading is somewhat simpler, because when the tea leaves were plucked is not part of determining the quality. All white tea is from a first plucking, because there is only one plucking of white tea during each growing season. Therefore, choosing **white jasmine** tea from China simply means choosing one of the two highest grades of white tea, Silver Needles or White Peony. However, if you choose a white Ceylon jasmine or a white Darjeeling jasmine tea, the grading will be totally different.

> To choose a good jasmine tea, begin by determining whether you want a **white**, green, black or oolong **jasmine** tea.

16.  *WebIndia123.com* website featuring a gardening page about Jasmine.[18]

The webpage reports that the common name of the jasmine plant is "Poets Jasmine, Common White Jasmine."

> Jasmine or Jessamine, the sweet-scented white flowers belongs [sic] to the genus Jasminum. …

> Grown all over the world for its fragrance, Jasmine flowers are used to flavor jasmine tea and other herbal or black teas.

17.  *English-Country-Garden.com* website advertising the sale of "Common White Jasmine" plants.[19]



---

[18] August 31, 2009 Office action.
[19] August 31, 2009 Office action.

18. *Wikipedia* entry for jasmine.[20]  The photographs display white flowers. There is a photograph of painting "The White Jasmine Branch, shown below.



*The White Jasmine Branch*, painting of ink and color on silk by Chinese artist Zhao Chang, early 12th century

In its December 17, 2007 response, applicant submitted evidence to show that the term "White Jasmine" identifies a particular scent.  The *PerfumeCountry.com* webpage advertises "White Jasmine Perfume by Woods of Windsor."  A news story posted on *TheScentedLife.com* website (November 27, 2007) describes a white jasmine and mint fragrance.

> The Scented Life:  All about fragrance
>
> Jo Malone White Jasmine & Mint
>
> From across the pond comes a new scent from Jo Malone, niche perfumer whose Orange Blossom perfume combines a sort of naturalism with minimalism in a very pleasing way.  This latest perfume is inspired by a sun drenched morning in an English garden, White Jasmine and Mint captures the scent of jasmine, wild rose and white blossoms with an unexpected twist of wild mint.

We find this evidence relevant not only because scent is one of the qualities consumers perceive in tea and tea beverages, but also because if consumers recognize WHITE JASMINE as a fragrance, we infer that they recognize it has a

---

[20] Applicant's September 1, 2010 response.

flavor. *See e.g., WebIndia123.com* ("Grown all over the world for its fragrance, Jasmine flowers are used to flavor jasmine tea"); *Buzzle.com* (June 7, 2007) ("The jasmine petals impart a delicate yet very aromatic fragrance and a slightly sweet flavor to the tea."); *FoodEditorials.com* ("Jasmine tea is the most popular variety of flavored tea. This is in part because Jasmine has been used to scent and flavor every variety of tea").

The examples of competitors' use of the term "White Jasmine" as the name of their goods is persuasive evidence that the relevant consumers perceive the term as the name of a type of tea (*e.g.,* Choice Organic White Jasmine Tea, Argo White Jasmine Tea, and White Jasmine Spring Bud). *Continental Airlines Inc. v. United Airlines Inc.,* 53 USPQ2d 1385, 1395 (TTAB 1999) ("evidence of competitors' use of particular words as the name of their goods or services is, of course, persuasive evidence that those words would be perceived by purchasers as a generic designation for the goods or services") (citation omitted); *see also Corbin v. Gould,* 133 U.S. 308, 313-14 (1890) (where those in the tea business used the term "Tycoon" to describe a class of teas, the term was incapable of protection, and instead was "a term which all men engaged in the tea business had an equal right to use, and which belonged to no one individual, either as a trade-mark or a trade label. It belonged to the public, as the common property of the trade . . . .")

A.    <u>Whether the wording "White" in the mark is deceptive under Section 2(a) of the Trademark Act of 1946, 15 U.S.C. § 1052(a)?</u>

This application has had a difficult prosecution as evidenced, in part, by its February 24, 2007 filing date. In the September 16, 2008 Office action (the third

Office action), the Trademark Examining Attorney refused registration on the ground that applicant's mark is deceptive under Section 2(a) of the Trademark Act because applicant's goods do not include white jasmine.

In the March 5, 2010 Office Action (the fifth Office action), the Trademark Examining Attorney withdrew the Section 2(a) deceptiveness refusal with respect to the term "White Jasmine" but continued the refusal as to the term "White."[21] The Trademark Examining Attorney provided the following explanation for the refusal:

> In this case, applicant's mark includes the wording "WHITE," which indicates that the goods contain white tea. This feature or ingredient is important to a significant portion of the relevant consumers' purchasing decision because white tea is believed to have health benefits.
>
> If the goods do not, in fact, contain white tea, the applied-for mark will deceive the public as to a material factor in its purchasing decision.

Section 2(a) of the Trademark Act, 15 U.S.C. §1052(a), is an absolute bar to the registration of deceptive matter on either the Principal Register or the Supplemental Register. It is well established that a mark may be found deceptive on the basis of a single deceptive term that is embedded in a larger mark,[22] and neither a disclaimer of the deceptive matter nor a claim that it has acquired distinctiveness under § 2(f) can obviate a refusal under § 2(a) on the ground that the

---

[21] The issue of whether the term WHITE JASMINE is deceptive is therefore not before us. Moreover, the issue of whether the word "Jasmine" is deceptive when used in connection with tea other than jasmine tea is not before us.

[22] *See* 15 U.S.C. § 1052(a) (a trademark is ineligible for registration if "it [c]onsists of *or comprises* . . . deceptive matter") (emphasis added). *See generally In re Fox*, 702 F.3d 633, 638 (Fed. Cir. 2012) (in § 1052(a), the term "comprises" means "includes").

13

mark consists of or comprises deceptive matter. *See Am. Speech-Language-Hearing Ass'n v. Nat'l Hearing Aid Society*, 224 USPQ 798, 808 (TTAB 1984); *In re Charles S. Loeb Pipes, Inc.*, 190 USPQ 238, 241 (TTAB 1975).

The issue on appeal is whether the mark is deceptive as applied to any of the goods in the application. *See In re Juleigh Jeans Sportswear Inc.,* 24 USPQ2d 1694, 1695 (TTAB 1992) ("The only issue on appeal therefore is whether the mark is deceptive as applied to the goods in the application."). *See also In re Analog Devices Inc.,* 6 USPQ2d 1808, 1810 (TTAB 1988), *aff'd without pub. op.,* 871 F.2d 1097, 10 USPQ2d 1879 (Fed. Cir. 1989) (if the mark is descriptive of any of the goods or services for which registration is sought, it is proper to refuse registration as to the entire class).

The Court of Appeals for the Federal Circuit, our primary reviewing court, has articulated the following test for whether a mark consists of or comprises deceptive matter:

(1)     Is the term misdescriptive of the character, quality, function, composition or use of the goods?

(2)     If so, are prospective purchasers likely to believe that the misdescription actually describes the goods?

(3)     If so, is the misdescription likely to affect a significant portion of the relevant consumers' decision to purchase?

*In re Budge Mfg. Co.,* 857 F.2d 773, 8 USPQ2d 1259, 1260 (Fed. Cir. 1988), *aff'g* 8 USPQ2d 1790 (TTAB 1987).

    1.     <u>Is the term "White" in the mark WHITE JASMINE misdescriptive of the character, quality, function, composition or use of the goods?</u>

As the starting point for our analysis, we note that for a term to misdescribe goods, the term must be merely descriptive of a significant aspect of the goods which the goods could plausibly possess but in fact do not. *In re Phillips-Van Heusen Corp.*, 63 USPQ2d 1047, 1051 (TTAB 2002). The goods at issue in this case include, *inter alia,* tea. Indeed, tea encompasses "beverages made of tea." "Tea" is defined, *inter alia,* as "an aromatic beverage prepared from tea leaves by infusion with boiling water."[23] According to the **ENCYCLOPEDIA BRITANNICA**,

> **Tea,** beverage produced by steeping in freshly boiled water the young leaves and leaf buds of the tea plant, Camellia sinensis.[24]

Thus, the goods at issue are tea, and, as shown by the evidence above, the term WHITE JASMINE refers to a type of tea (*i.e.,* white jasmine tea). White jasmine tea is a subcategory of two types of tea: white tea and jasmine tea.[25] Consequently, the word "White" immediately describes, without conjecture or speculation, a significant ingredient of tea. That is, tea purchasers will clearly understand that because white tea is a type of tea, the word "White" in the term

---

[23] **MERRIAM-WEBSTER ONLINE DICTIONARY AND THESAURUS** (m-w.com) (2012). The Board may take judicial notice of dictionary definitions, *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imp. Co.*, 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983), including online dictionaries that exist in printed format or have regular fixed editions. *In re Red Bull GmbH*, 78 USPQ2d 1375, 1377 (TTAB 2006).

[24] The Board may take judicial notice of information from encyclopedias. *Productos Lacteos Tocumbo S.A. de C.V. v. Paleteria La Michoacana Inc.*, 98 USPQ2d 1921, 1934 n.6 (TTAB 2011).

[25] *See e.g.,* the article "Tea: Grading Jasmine Tea" posted on the Buzzle.com website (May 26, 2007) identifying white jasmine as a type of jasmine tea and white tea (August 31, 2009 Office action) ("choosing a quality white jasmine tea from China simply means choosing one of the two highest grades of white tea.").

WHITE JASMINE designates that the tea is white tea or at least contains white tea.

Applicant has indicated that its tea does not contain white tea leaves (see Applicant's February 24, 2011, Request for Reconsideration, part III), yet consumers will expect, upon encountering WHITE JASMINE on applicant's goods, that the goods will consist in significant part of white tea. We note that applicant's identification of goods includes "black tea," but there is nothing in the record to indicate that white tea includes black tea.

Accordingly, it is clear that the term WHITE JASMINE misdescribes tea that is not white tea and, in this case, includes black tea.

2.     <u>Are prospective purchasers likely to believe that the misdescription actually describes the goods</u>?

Given the various types of teas (*e.g.,* black, green, white and oolong), their popularity and specific attributes, it is quite likely that customers of applicant's products would believe that applicant's tea is white tea when it could be any of the above-noted teas.

3.     <u>Is the misdescription likely to affect a significant portion of the relevant consumers' decision to purchase</u>?

To establish that the misdescriptive quality or characteristic would be a material factor in the purchasing decision of a significant portion of the relevant consumers, the examining attorney must provide evidence that the misdescription would make the product or service more appealing or desirable to prospective purchasers. *In re Juleigh Jeans Sportswear Inc.*, 24 USPQ2d at 1698-99; TMEP

§1203.02(d). Here, to support the contention that white tea is more appealing or desirable because it provides health benefits, the Examining Attorney introduced the evidence listed below.

a. The *Wikipedia* entry for "white tea" provides that studies have shown that "white tea had high anti-inflammatory, anti-collagenase, and anti-elastase properties which could potentially reduce the risks of developing rheumatoid arthritis, some cancers, heart disease & slow the enzymatic break down of elastin and collagen (ie [sic] wrinkles or sagging) which accompany aging."[26]

b. *About.com*: Alternative Medicine

This webpage features an article entitled "White Tea – Benefits of White Tea" (May 27, 2009).[27] It identifies and discusses how white tea helps obesity control, cancer prevention, and skin protection.

c. *eHow.com*

This webpage features an article entitled "How to Drink White Tea to Prevent the Common Cold" by Kristie Leong, M.D.[28] Dr. Leong writes that white tea can help to reduce the incidence of colds and bacterial and viral infections.

d. *Articlesbase.com*

This webpage features an article entitled "Lose Weight On White Tea Diet" (May 8, 2009).[29] The article reports that "white tea has special qualities that can

---

[26] March 5, 2010 Office action.
[27] March 5, 2010 Office action.
[28] March 5, 2010 Office action.
[29] March 5, 2010 Office action.

help you lose weight." "The latest tests have shown that compounds in white tea prevent the storage of fat and helps break down existing fat deposits in the body."

> e.      White Tea Guide (*whiteteaguide.com*)[30]
>
> Health Benefits Of White Tea
>
> Tea has been used as a medicine for centuries. Now modern science is discovering what people in China and throughout the world have long known: tea is good for you. While green and black tea are very healthy, white tea is the least processed tea and has the highest antioxidant levels. It may be the supreme Drink of Health.

The article in this website identifies and discusses the following benefits of white tea: high levels of antioxidants, cancer prevention, lower blood pressure, lower cholesterol, heart protection, creates stronger bones, natural killer of bacteria and viruses, and promotes healthier teeth and gums.

> f.      *Suite101.com*[31]
>
> Health Benefits of White Tea (March 29, 2008)
>
> Increases Bone Density, Fights Cancer, Lowers Cholesterol and More
>
> Learn the facts about white tea. This 5,000 year old beverage is showing promise in keeping you healthy. It's also delicious and easy to make.
>
> \*      \*      \*
>
> Health Benefits of White Tea
>
> What's all the fuss about? Well, you name it. Undergoing less processing than many other tea varieties, white tea can have ten times the antioxidant power of Vitamin E

---

[30] September 8, 2010 Office action.
[31] September 8, 2010 Office action.

and impressively high concentration of polyphenols and catechins. This power punch can help fight the ravages of aging caused by free radicals in your system. It can also help to lower cholesterol and inhibit the development of cancer cells. Side benefits include white tea's ability to help increase bone density, aid the immune system, and help lower blood pressure.

g.      White Tea (*whitetea.com*)[32]

Benefits of White Tea

Tea has been used for medicinal purposes for centuries. In ancient China, people used white tea to cure many different ailments; and while they may not have understood the reason tea made them feel better, they knew it worked. Over the past few decades, however, science has discovered that the benefits of white tea are more than just the drinker's imagination. In fact, the benefits of white tea are more than even the scientist's thought they would find.

The webpage identifies and discusses the antioxidants that help fight aging, cancer and diabetes, the fluoride that helps fight tooth decay, and that white tea drinkers have greater bone density. *See also* FoodEditorials.com ("White Tea Health Benefits"); Tea-Brewery.com (white jasmine tea has a high level of antioxidants and very little caffeine), Tenren.com (white tea may have the strongest anti-cancer potential of all teas)

The evidence establishes that consumers perceive that white tea has desirable health benefits. Thus, the misdescription is material to consumers interested in purchasing or drinking white tea to obtain these health benefits, and is likely to induce such purchasers to buy or drink the tea. The word "White," which

---

[32] September 8, 2010 Office action.

describes applicant's tea as believably being a white tea, is therefore deceptive within the meaning of Section 2(a) of the Trademark Act.

B.    Whether the term "White Jasmine" should be disclaimed as either deceptively misdescriptive or generic?

Because the refusal as deceptive under Section 2(a) absolutely bars registration, the question of a disclaimer of a portion of the mark becomes moot. However, in the interest of completeness, the disclaimer requirement will be considered in the alternative. According to the Trademark Examining Attorney, "applicant must disclaim the wording 'WHITE JASMINE' apart from the mark as shown because the wording is generic or deceptively misdescriptive in the context of applicant's goods, namely, 'Beverages made of tea; Black tea; Flavourings of tea; Spice Blends; Spices.'"[33]  While the examining attorney could not, it appears, decide unequivocally on the basis for the disclaimer requirement, we ultimately find "WHITE JASMINE" deceptively misdescriptive for the identified goods, and affirm the disclaimer requirement on that ground.

As noted above, the mark includes a design element in addition to the wording WHITE JASMINE.  Section 6(a) of the Trademark Act, 15 U.S.C. § 1056(a) reads, in relevant part, as follows:

> The Director may require the applicant to disclaim an unregistrable component of a mark otherwise registrable.

A disclaimer is a statement that the applicant or registrant does not claim the exclusive right to use a specified element or elements of the mark in a trademark application or registration.  "The effect of a disclaimer is to disavow any

---

[33] Trademark Examining Attorney Brief, p. 6 (unnumbered).

exclusive right to the use of a specified word, phrase, or design outside of its use within a composite mark." *In re Franklin Press, Inc.*, 597 F.2d 270, 201 USPQ 662, 665 (CCPA 1979); *see also Sprague Electric Co. v. Erie Resistor Corp.*, 101 USPQ 486, 486-87 (Comm'r Pats. 1954) ("As used in trade mark registrations, a disclaimer of a component of a composite mark amounts merely to a statement that, in so far as that particular registration is concerned, no rights are being asserted in the disclaimed component standing alone, but rights are asserted in the composite; and the particular registration represents only such rights as flow from the use of the composite mark.").

"[I]t is within the discretion of an Examining Attorney to require the disclaimer of an unregistrable component (such as a common descriptive, or generic, name) of a composite mark sought to be registered on the Principal Register under the provisions of Section 2(f)." *In re Creative Goldsmiths of Wash., Inc.*, 229 USPQ 766, 768 (TTAB 1986). Failure to comply with a requirement for a disclaimer is a basis on which to refuse registration. *See In re Slokevage*, 441 F.3d 957, 78 USPQ2d 1395, 1399-1400 (Fed. Cir. 2006); *In re Stereotaxis Inc.*, 429 F.3d 1039, 77 USPQ2d 1087, 1089 (Fed. Cir. 2005); *In re Omaha Nat'l Corp.*, 819 F.2d 1117, 2 USPQ2d 1859 (Fed. Cir. 1987); *In re Richardson Ink Co.,* 511 F.2d 559, 185 USPQ 46, 47 (CCPA 1975); *In re Nat'l Presto Indus., Inc.*, 197 USPQ 188, 190 (TTAB 1977); *In re Pendleton Tool Indus., Inc.*, 157 USPQ 114, 115 (TTAB 1968).

Section 2(e)(1) of the Trademark Act, 15 U.S.C. §1052(e)(1), prohibits registration of terms that are deceptively misdescriptive of the goods to which they

are applied. The test for determining whether a term is deceptively misdescriptive involves a determination of (1) whether the matter sought to registered misdescribes the goods and, if so, (2) whether anyone is likely to believe the misrepresentation. *In re Quady Winery Inc.,* 221 USPQ 1213, 1214 (TTAB 1984). As a component part of our prior conclusion that WHITE is deceptive in the context of this mark, we found WHITE misdescriptive of applicant's goods. Based on the record described above, there is clear evidence to support a further finding that the relevant public, when it considers WHITE JASMINE in conjunction with tea, readily understands the term to identify a more particular type of white tea (white tea scented or flavored with jasmine), and would believe applicant's goods are white jasmine tea. In addition, it is undisputed that applicant's goods do not consist of or contain that type of tea. Thus, WHITE JAMSINE is deceptively misdescriptive and the requirement for a disclaimer on that basis is affirmed.

We need not reach the examining attorney's alternative ground for the disclaimer requirement, the genericness of WHITE JASMINE. We note, moreover, that TMEP §1203.02(e)(i) does not direct examining attorneys to assess whether a term is descriptive or generic when "there is evidence in the record clearly indicating that the mark or a term(s) in the mark is misdescriptive."

C.    <u>Whether the term "White Jasmine" has acquired distinctiveness</u>?

Unlike marks that are deceptive under Section 2(a), deceptively misdescriptive marks under §2(e)(1) may be registrable on the Principal Register with a showing of acquired distinctiveness under Section 2(f). Thus, if, on appeal, it

22

should be found that WHITE is not deceptive, but WHITE JASMINE is deceptively misdescriptive then, absent a disclaimer, the mark remains unregistrable unless acquired distinctiveness is shown. Accordingly, we now consider in detail applicant's claim and evidence of acquired distinctiveness for WHITE JASMINE. Under such circumstances, applicant has the burden to establish a prima facie case of acquired distinctiveness. *See Yamaha International Corp. v. Hoshino Gakki Co., Ltd.*, 840 F.2d 1572, 6 USPQ2d 1001, 1006 (Fed. Cir. 1988).

The amount and character of evidence required to establish acquired distinctiveness depends on the facts of each case and particularly on the nature of the mark sought to be registered. *See Roux Labs., Inc. v. Clairol Inc.*, 427 F.2d 823, 829, 166 USPQ 34, 39 (CCPA 1970); *In re Hehr Mfg. Co.*, 279 F.2d 526, 528, 126 USPQ 381, 383 (CCPA 1960); *In re Gammon Reel, Inc.*, 227 USPQ 729, 730 (TTAB 1985). Typically, more evidence is required where a mark is so highly descriptive, that purchasers seeing the matter in relation to the named goods would be less likely to believe that it indicates source in any one party. *See, e.g., In re Bongrain Int'l Corp.,* 894 F.2d 1316, 1318, 13 USPQ2d 1727, 1729 (Fed. Cir. 1990); *In re Seaman & Assocs., Inc.*, 1 USPQ2d 1657, 1659 (TTAB 1986); *In re Packaging Specialists, Inc.,* 221 USPQ 917, 919 (TTAB 1984). Evidence that third parties in applicant's field use the same or substantially the same wording as the alleged mark, or very similar wording as the mark, as in this case, tends to indicate the mark has not acquired distinctiveness.

To support its claim of acquired distinctiveness, applicant submitted the February 15, 2010 and December 19, 2011 declarations of its President who attested to the following facts:

February 15, 2010 Declaration

5.     Based upon information and belief, [applicant] first made use of the trademark WHITE JASMINE & Design in commerce in the United States at least as early as December 2003.  On information and belief, the use of this trademark since this date has been substantially exclusive and continuous by [applicant].

December 19, 2011 Declaration

5.     Since 2007, Applicant has sold nearly ten thousand (10,000) containers of teas and spices under the WHITE JASMINE & Design trademark in the U.S.

6.     Since 2007, the Applicant's revenue from the sale of WHITE JASMINE brand products has increased nearly four-hundred percent (400%).

7.     The Applicant prominently advertises and promotes its WHITE JASMINE brand teas and spices on its website. …

8.     The Applicant prominently features and promotes its WHITE JASMINE & Design mark on a weekly television show on WMTV NBC-15 called White Jasmine Everyday Cooking.  WHITE JASMINE brand spices are featured and advertised on this cooking show, which has aired over (90) episodes since 2004.  Recorded episodes are currently available to consumers via DVD and on www.whitejasmine.com. …

\*     \*     \*

10.     Upon information and belief, products bearing the WHITE JASMINE & Design trademark are sold in at

24

least ninety-two (92) stores located throughout the Midwest.

11. Since 2009, the Applicant has promoted WHITE JASMINE brand teas, spices and cheeses via an exhibit, display or presentation at over fifteen (15) food and wine shows nationwide, including at the: Windy City Wine Festival in Naperville, Il; Milwaukee Wine Tasting in Milwaukee, WI; Grand Rapids Wine and Food Festival in Grand Rapids, MI; Epcot International Food Festival in Orland [sic], FL; and IDDBA National Show in Anaheim, CA.

We do not find applicant's evidence to be convincing. First, applicant's use since December 2003, while indicative of its commercial success, is not conclusive or persuasive considering the nature of the subject matter sought to be registered and the widespread third-party use of that term. *In re Ennco Display Systems Inc.,* 56 USPQ2d 1279, 1286 (TTAB 2000) (applicant's use of the product designs ranging from seven to seventeen years is insufficient to bestow acquired distinctiveness). *See also In re Packaging Specialists, Inc.,* 221 USPQ 917, 920 (TTAB 1984) (evidence submitted by applicant held insufficient to establish acquired distinctiveness of PACKAGING SPECIALISTS, INC., for contract packaging services, notwithstanding, *inter alia,* continuous and substantially exclusive use for sixteen years, deemed "a substantial period but not necessarily conclusive or persuasive").

Second, in considering the totality of the evidence submitted by applicant, applicant's sales do not indicate recognition of the term WHITE JASMINE as a trademark. Applicant's witness attested to the sale 10,000 units over 4 years or 2,500 units per year. Applicant's website indicates that its tea products sell for

$6.50 per container and its spices sell for $8.99 per container. There is no testimony regarding how many units of tea or spices are sold. If we assume that it is evenly split between the products, the average price is $7.50 and, therefore, applicant has generated revenues of approximately $75,000 over four years or $18,250 per year. These figures are hardly persuasive evidence of acquired distinctiveness for products marketed to the general consuming public.[34]

Furthermore, there is no evidence putting applicant's sales into context to show whether applicant's sales are significant vis-à-vis the sales of competing products. *Cf. Bose Corp. v. QSC Audio Products, Inc.*, 293 F.3d 1367, 63 USPQ2d 1303, (Fed. Cir. 2002) (with respect to the fame of a mark, "[r]aw numbers of product sales and advertising expenses may have sufficed in the past to prove fame of a mark, but raw numbers alone in today's world may be misleading.").

Applicant states that it advertises its WHITE JASMINE teas and spices on its website, but applicant fails to indicate how many visitors its website attracts. Likewise, applicant's appearance on a weekly cooking television broadcast in Madison, Wisconsin is probative, but applicant fails to indicate how many viewers watch the show.[35] Also, applicant failed to state how many DVDs it sold.

---

[34] With respect to applicant's claim that its products are sold in at least 92 stores, that means, assuming all the sales are through those retailers, that the average sale per store is 28 containers per year of applicant's WHITE JASMINE teas or spices generating $217.80 per year.

[35] A press release published on applicant's website states that "the show will reach 500,000 households," but fails to state how many viewers actually watch the show.

Applicant's promotional efforts at trade shows is probative, however, those efforts do not outweigh its minimal sales and the extensive third-party use of the term.

We note that the record is lacking in any media recognition regarding applicant's product and how the term WHITE JASMINE points uniquely and exclusively to applicant. The *Bravura* magazine, a local Madison, Wisconsin publication, profiles applicant's President and references the WHITE JASMINE company on the third page of the article. The focus of the article is on the President, not the company. The *ListMy5* website references WHITE JASMINE as a cheese company, not as the source of teas and spices.

In this particular case, more persuasive evidence than that offered here is necessary to establish that applicant's mark WHITE JASMINE has acquired distinctiveness.

**Decision**: The refusal to register under Section 2(a) is affirmed and the requirement that applicant disclaim the term WHITE JASMINE is affirmed and, therefore, registration is refused.