THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed: April 29, 2020

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re UST Global (Singapore) Pte. Ltd.*

_____

Serial No. 87657822

_____

Justin D. Swindells, Lauren J. Arnold and Alexis P. Grilli of Nixon Peabody LLP,
    for UST Global (Singapore) Pte. Ltd.

Donald O. Johnson, Trademark Examining Attorney, Law Office 104,
    Zachary Cromer, Managing Attorney.

_____

Before Kuhlke, Pologeorgis and Lebow,
    Administrative Trademark Judges.

Opinion by Lebow, Administrative Trademark Judge:

Applicant, UST Global (Singapore) Pte. Ltd., applied to register the mark

INFINITY LABS (in standard characters) on the Principal Register for the following

services:

> Incubation services, namely, providing work space containing business
> equipment to freelancers, start-ups, existing businesses and non-profits,
> in International Class 35;
>
> Incubation services, namely, providing financing to freelancers, start-
> ups, existing businesses and non-profits; Think tank services in the
> nature of consultation services in the field of digital finance, in
> International Class 36;

Think tank services in the nature of consultation services in the field of additive manufacturing, in International Class 40;

Education services, namely, providing on-line classes, seminars, meet-ups, and workshops in the fields of retail, software design, technology research and development, and customer service; Education services, namely, one-on-one mentoring in the field of retail technology, in International Class 41; and

Scientific and technological services, namely, research and design in the fields of smart cities and digital governments, industrial Internet of Things, additive manufacturing, enterprise mobility, pervasive computing, machine intelligence, cognitive computing, digital optics, mixed reality, block chain, digital finance, bio informatics, biometric identity systems, hyperimaging, artificial vision, cyber defense, digital forensics, neuromorphic chips, neural analytics, quantum computing, id3 algorithms, and cryptography; Providing temporary use of on-line non-downloadable software development tools; Collaborative computer programming for others in the nature of hackathons; Think tank services, namely, providing new ideas and concepts for web-based applications for others; Think tank services in the nature of technical consultation services in the field of smart cities technologies and digital governments technologies, industrial Internet of Things, enterprise mobility technologies, pervasive computing, machine intelligence, cognitive computing, digital optics technologies, mixed reality, block chain, biometric identity systems, hyperimaging, artificial vision, cyber defense, digital forensics, neuromorphic chips, neural analytics, quantum computing, and cryptography; Platform as a service (PAAS) services, namely, hosting software for use by others for use in research, design, and utilization of block chain software, robotic process automation, social networks, machine learning, Internet of Things, augmented reality, and advanced analytics; Computer services, namely, hosting on-line web facilities for others for organizing and conducting online meetings, gatherings, and interactive discussions, in International Class 42.[1]

During prosecution, the Trademark Examining Attorney required Applicant to disclaim "LABS" apart from the mark as a whole. In response, Applicant disclaimed

---

[1] Application Serial No. 87657822 filed on October 24, 2017, under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), based upon Applicant's allegation of a bona fide intention to use the mark in commerce.

"LABS" for the Class 35 services and a portion of the Class 42 services, but declined to disclaim the wording for the services identified in International Classes 36, 40, and 41, as well as the remaining services in Class 42. When the refusal was made final, Applicant appealed and requested reconsideration. When the request for reconsideration was denied, this appeal resumed. The appeal is fully briefed.

We affirm the refusal to register.

## I.    Applicable Law

Under Section 6(a) of the Trademark Act, 15 U.S.C. § 1056(a), the USPTO "may require the applicant to disclaim an unregistrable component of a mark otherwise registrable," such as a component which is merely descriptive under Section 2(e)(1); failure to comply with the requirement is a basis for refusing registration of an applicant's proposed mark. *In re Slokevage*, 441 F.3d 957, 78 USPQ2d 1395, 1399-1400 (Fed. Cir. 2006); *In re Stereotaxis, Inc.*, 429 F.3d 1039, 77 USPQ2d 1087, 1089 (Fed. Cir. 2005); *see also Dena Corp. v. Belvedere Int'l, Inc.*, 950 F.2d 1555, 1560 (Fed. Cir. 1991) ("an applicant with an otherwise registrable composite mark may, by disclaimer, avoid rejection due to an unregistrable component of the mark") (citation and internal quote marks omitted).[2]

A term is "merely descriptive" within the meaning of § 2(e)(1) "if it immediately conveys information concerning a feature, quality, or characteristic of the goods or

---

[2] The effect of a disclaimer in a registration is to disavow any exclusive right to the use of a specified word, phrase, or design "except in the precise relation and association in which it appeared in the drawing and description." *In re Franklin Press, Inc.*, 597 F.2d 270, 201 USPQ 662, 664 (CCPA 1979) (quoting *In re Hercules Fasteners, Inc.*, 203 F.2d 753, 97 USPQ 355, 357 (1953)).

services for which registration is sought." *In re N.C. Lottery*, 866 F.3d 1363, 123 USPQ2d 1707, 1709 (Fed. Cir. 2017) (citing *In re Bayer AG*, 488 F.3d 960, 82 USPQ2d 1828, 1831 (Fed. Cir. 2007)). A term "need not immediately convey an idea of each and every specific feature of the goods [or services] in order to be considered merely descriptive; it is enough if it describes one significant attribute, function or property of the goods [or services]." *In re Fat Boys Water Sports LLC*, 118 USPQ2d 1511, 1513 (TTAB 2016) (citing *In re Gyulay*, 820 F.2d 1216, 3 USPQ2d 1009, 1010 (Fed. Cir. 1987)).

"Descriptiveness must be evaluated 'in relation to the particular goods or services for which registration is sought, the context in which the mark is used, and the possible significance the term would have to the average consumer because of the manner of its use or intended use,'" *In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012) (quoting *In re Bayer AG*, 82 USPQ2d at 1831), and "not in the abstract or on the basis of guesswork." *Fat Boys Water Sports,* 118 USPQ2d at 1513 (citing *In re Abcor Dev. Corp.*, 588 F.2d 811, 200 USPQ 215, 218 (CCPA 1978)). "In other words, we evaluate whether someone who knows what the goods [or services] are will understand the mark to convey information about them." *Id*. at 1515 (citing *DuoProSS Meditech Corp. v. Inviro Med. Devices Ltd.*, 695 F.3d 1247, 103 USPQ2d 1753, 1757 (Fed. Cir. 2012)).

## II.    The Evidence of Record

Evidence that a term is merely descriptive to the relevant purchasing public "may be obtained from any competent source, such as dictionaries, trade journals,

newspapers, or surveys." *In re Bayer AG*, 82 USPQ2d at 1831; *Abcor Dev.*, 200 USPQ at 218; *N.C. Lottery*, 123 USPQ2d at 1710; *In re Nett Designs Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1565 (Fed. Cir. 2001).

The Examining Attorney provided the following dictionary definitions of "incubation," "labs" and "laboratory" in support of the refusal to register INFINITY LABS (absent the disclaimer of "LABS"):

- Incubation – "to form or consider slowly and protectively, as if hatching";[3]

- Lab – an abbreviation for "laboratory";[4] and

- Laboratory – "a place equipped for experimental study in a science or for testing and analysis" or "any place, situation, set of conditions, or the like, conducive to experimentation, investigation, observation, etc.; anything suggestive of a scientific laboratory."[5]

Applicant provided a dictionary definition for the wording "think tank":

- Think tank – "an institute, corporation, or group organized to study a particular subject (such as a policy issue or a scientific problem) and provide information, ideas, and advice" or "an organization that consists of a group of people who think of new ideas on a particular subject or who give advice about what should be done." [6]

The Examining Attorney also made of record twenty-three use-based third-party registrations for marks that include and disclaim the term "LABS."[7] "Third party

---

[3] 5 TTABVUE 7 (February 2, 2019, Request for Reconsideration Denied). Citations to the briefs, Request for Reconsideration and Reconsideration Letter refer to TTABVUE, the Board's online docketing system. Citations to the examination record refer to the Trademark Status & Document Retrieval system (TSDR), in the downloadable .pdf format.

[4] January 8, 2018 Office Action, TSDR 7.

[5] February 2, 2019 Request for Reconsideration Denied, 5 TTABVUE 5.

[6] January 17, 2019 Request for Reconsideration, 4 TTABVUE 10.

[7] July 17, 2018 Office Action, TSDR 6-68.

registrations show the sense in which the word is used in ordinary parlance and may show that a particular term has descriptive significance as applied to certain goods or services." *Institut National Des Appellations D'Origine v. Vintners Int'l Co.*, 958 F.2d 1574, 22 USPQ2d 1190, 1196 (Fed. Cir. 1992). *See also In re American Furniture Warehouse Co.*, 126 USPQ2d 1400, 1404 (2018); *In re Box Solutions Corp.*, 79 USPQ2d 1953, 1955 (TTAB 2006).

## III.   Analysis

The Examining Attorney argues that the evidence of record, including the dictionary definitions and third-party registrations for marks that include and disclaim the term "LABS," shows that the term "LABS" is merely descriptive of all services identified in each of the four classes that are the subject of this appeal. Applicant maintains that the term "LABS" does not immediately describe any of the services without speculation or conjecture; that the Examining Attorney's third-party registrations are few in number, inapplicable to the services at issue, and inconclusive on the determination of descriptiveness; and that the services, as recited in the application, make no reference to a specific place for study, such as a laboratory.

We turn now to the services recited in each of the refused classes to evaluate whether "LABS" is merely descriptive of the services identified. Inasmuch as Applicant has already disclaimed "LABS" for Class 35 in its entirety and a portion of the services in Class 42, this appeal pertains to the remaining services identified in Classes 36, 40, 41 and 42.

### A. Applicant's Class 36 Services

####    i.    Incubation services, namely, providing financing to freelancers, start-ups, existing businesses and non-profits

To support his refusal with respect to Applicant's Class 36 incubation services, the Examining Attorney refers to the dictionary definitions of record and two third-party registrations with the word "LABS" disclaimed:

> Registration No. 4228654 for the mark ELEVATOR LABS, and Registration No. 4228656 for the mark ELEVATOR LABS and Design, both for "business incubator services, namely, providing financing, equity capital investment, debt investment, rental of office space, and strategic consulting, namely, strategic financial advisory services to start-ups, entrepreneurs and existing businesses".[8]

These registrations were not maintained and have been cancelled. To the extent that they might still be relevant to show the sense in which a term is used in ordinary parlance, they are not particularly probative without further corroborating evidence.

The Examining Attorney argues that "LABS" merely describes a characteristic or feature of Applicant's incubation services in Class 36 "because it provides information about the services, i.e., that the services are conducive to experimental study, investigation, observation, testing and analysis."[9] Applicant, however, asserts that "the Examining Attorney has greatly misunderstood and misinterpreted the wording in Applicant's Class 36 services. Applicant is quite clearly offering financial consulting services to startup businesses."[10] According to Applicant, the Examining

---

[8] July 17, 2018 Office Action, TSDR 13-15.

[9] 13 TTABVUE 9.

[10] 11 TTABVUE 6.

Attorney is "attaching a meaning to the term 'incubation' which does not logically connect to Applicant's use of the wording."[11]

Although characterized as "incubation services," the essence of Applicant's incubation services is the **provision of financing** to businesses. Thus, in order to find "LABS" to be merely descriptive of incubation services, namely, providing financing, the record must include evidence supporting that finding. We do not imply that the meaning of the term "incubation services" should be ignored; it should not. But its meaning should be considered along with the substance of those services, which is the provision of financing. The Examining Attorney does not discuss financial services and nothing in the record explains how the provision of financing would be related to "a place equipped for experimental study … for testing and analysis" or a "place, situation, set of conditions … conducive to experimentation, investigation, [or] observation," such that "LABS" would be descriptive of them.

Based on the evidence presented, we find that the Examining Attorney has not shown that the term "LABS" is merely descriptive of "incubation services, namely, providing financing to freelancers, start-ups, existing businesses and non-profits.*"*

### ii. Think tank services in the nature of consultation services in the field of digital finance

With regard to Applicant's Class 36 "think tank services," the Examining Attorney relies on Applicant's submitted definition of "think tank" (an institute, corporation, group organized to study a particular subject {such as a policy issue or scientific

---

[11] *Id.*

problem} and provide information, ideas, and advice"), along with three third-party registrations for marks that include and disclaim "LABS" for think tank services:[12]

Registration No. 4820765 for the mark PRPL LABS for "Think tank services, namely, providing new ideas and concepts for web-based applications for others";[13]

Registration No. 5172075 for the mark WDLABS for "Think tank services, namely, providing and developing ideas and concepts for new technology innovation and consulting with others in the field of new technology innovation";[14] and

Registration No. 5254337 for the mark NABLA ZERO LABS for "Engineering; Scientific research and development; Think tank services, namely, providing new ideas and concepts for web-based applications for others; Consultation and research in the field of aerospace engineering".[15]

The Examining Attorney argues that the evidence of record demonstrates that the word "LABS merely describes a characteristic or feature of Applicant's Class 36 think tank services because it provides information that said services are conducive to experimental study, investigation, observation, testing and analysis."[16] While he focuses on the preliminary wording "think tank services" in the recitation, the essence of the specified think tank services, "**consultation** services in the field of digital finance," further defines the scope and nature of the services; the complete meaning of the services must be considered.

---

[12] Although these registrations cover Class 42 services, as the Examining Attorney notes, the classification of think tank services depends on the subject matter to which those services are directed, so classification is not probative. 13 TTABVUE 11, 13.

[13] July 17, 2018 Office Action, TSDR 62-63.

[14] *Id*. at 64-66.

[15] *Id*. at 67-68.

[16] 13 TTABVUE 10.

The term "think tank'" in the recitation supports a finding of descriptiveness because like some labs which "deliberate together," think tanks are "organized to study a particular subject {such as a policy issue or scientific problem} and provide information, ideas, and advice." In addition, we consider the particular nature of those services, "consultation," and its relation to think tank services. Although neither the Examining Attorney nor Applicant defined this term, we need not blind ourselves to its meaning, which is material to our review. To "consult" means "to deliberate together."[17]

Thus, when we consider the plain meaning of the word consultation within the context of think tank services, the term "LABS" is descriptive and the actual subject matter of that deliberation, the field of digital finance, becomes ancillary. This is a subtle point, but an important one and the reason why our analysis with respect to these services differs from our view of the disclaimer requirement regarding the **provision** of financing services. One of the third-party registrations provided by the Examining Attorney, Registration No. 5172075 for the mark WDLABS ("LABS" disclaimed) for "think tank services, namely, [] consulting with others in the field of new technology innovation," corroborates this conclusion.

Applicant argues that the Examining Attorney's definition of "LABS" as "a place for experimental study in a science or for testing and analysis" precludes a finding

---

[17] https://www.merriam-webster.com/dictionary/consult#h1 (accessed on April 1, 2020). The Board may take judicial notice of dictionary definitions. *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imp. Co.*, 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983), including online dictionaries that exist in printed format or have regular fixed editions. *In re Cordua Rests. LP*, 110 USPQ2d 1227, 1229 n.4 (TTAB 2014), *aff'd*, 823 F.3d 594, 118 USPQ2d 1632 (Fed. Cir. 2016).

that "LABS" is immediately descriptive of its Class 36 services.[18] However, as noted by the Examining Attorney, this argument overlooks the additional meaning of "LABS" as "any place, situation, set of conditions, or the like, conducive to experimentation, investigation, observation, etc."[19] So long as any one of the meanings of a term is descriptive, the term may be considered to be merely descriptive. *In re Mueller Sports Med., Inc.*, 126 USPQ2d 1584, 1590 (TTAB 2018) (quoting *In re Chopper Indus.*, 222 USPQ 258, 259 (TTAB 1984)). *See also In re Bright-Crest, Ltd.,* 204 USPQ 591, 593 (TTAB 1979).

Considering the overall meaning of Applicant's services, we find that consumers of Applicant's think tank services would immediately understand "LABS" to convey information about the services, namely that they are provided within a place, situation, or set of conditions conducive to experimentation, investigation, and/or observation. Accordingly, "LABS" is merely descriptive of Applicant's Class 36 think tank services.

### B. Applicant's Class 40 Services

#### Think tank services in the nature of consultation services in the field of additive manufacturing

The Examining Attorney relies on the same evidence to support his refusal with respect to Applicant's Class 40 services. As was the case with Applicant's Class 36 services, the Examining Attorney focuses on the prefatory wording "think tank services." He relies on the same definition for think tank services, and the same third-

---

[18] 11 TTABVUE 8.

[19] 13 TTABVUE 11.

party registrations. However, for the same reasons we expressed above, the nature of the think tank services, namely, consultation services, adds to the determination of the mere descriptiveness of the word "LABS" in connection with the identified services. Applicant describes these consulting services under the spotlight of "think tank" services, which lends further support to a finding of descriptiveness. That the subject matter of those services is "additive manufacturing" only serves to strengthen that finding.

Applicant argues that

> [T]he Examining Attorney cites a mere three registrations which utilize a disclaimer in connection of think tank services. Once again, Applicant notes that third party registrations are not conclusive of descriptiveness. See TMEP §1209.03(a). Even if third-party registrations were sufficient evidence to conclude descriptiveness, certainly evidence in the form of three registrations would not be sufficient to conclude descriptiveness."[20]

TRADEMARK MANUAL OF PROCEDURE § 1209.03(a) and the cases referenced therein are usually cited for the proposition that descriptiveness is often found despite the absence of a disclaimer in other registrations for similar marks. However, Applicant is correct in noting that third-party registrations are not conclusive on the question of descriptiveness. "The Board must decide each case on its own merits." *In re Nett Designs Inc.*, 57 USPQ2d at 1565. Therefore, we emphasize that our decision is based on the definitions of record for the relevant terms being discussed, coupled with our understanding of how those terms relate to the services at issue. The number of third-

---

[20] 11 TTABVUE 10.

party registrations is not determinative; the question is whether they support and corroborate the evidence overall, which they do for Applicant's Class 40 services.

Applicant also asserts that, despite the fact that think tanks are organized to study a particular subject,

> Subjects can be studied outside of a laboratory – in a conference room, in an office, in a cafeteria, at a dining room table. Any connection to think tank services that would be gleaned from "LABS" would have to be part of a multi-stage reasoning process that 1) first understanding the meaning of "LABS," [sic] then 2) understands the meaning of think tank services (which is not necessarily common knowledge to all consumers), and finally 3) understand that studying of a subject by the think tank could be completed in a "LAB."

As Applicant suggests, the definition of laboratory is not confined to a laboratory setting. The question is not whether someone who does not understand the services would find the term descriptive but "[r]ather, [] whether someone who knows what the goods or services are will understand the mark to convey information about them," *DuoProSS Meditech Corp.*, 103 USPQ2d at 1757. Thus, we find that "LABS" is merely descriptive of Applicant's Class 40 services.

### C. Applicant's Class 41 Services

**Education services, namely, providing on-line classes, seminars, meet-ups, and workshops in the fields of retail, software design, technology research and development, and customer service; Education services, namely, one-on-one mentoring in the field of retail technology**

To support the refusal regarding Applicant's Class 41 educational services, the Examining Attorney relies on the dictionary evidence of record and nine third-party registrations for marks that include and disclaim "LABS" for educational services, including the following representative examples:

1. Reg. No. 4889612 for the mark FIRST GREEN LINKS AS LABS for, inter alia, "Educational services, namely, conducting workshops, webinars and field trips in the fields of STEM (science, technology, engineering and math) and environmental education using golf courses as learning laboratories";[21] and

2. Reg. No. 5300069 for the mark BAD SECTOR LABS ("LABS" disclaimed") for "Education services, namely, providing live and on-line classes and training in the field of cybersecurity; security awareness training, namely, training in the fields of cyber security planning and awareness; software security training, namely, training others in maintaining software security in the field of cyber threats and warfare; [] and vulnerabilities in computers, computer systems, networks, hardware, software applications, digital devices, digital data, and mobile devices."[22]

The Examining Attorney maintains that the term "LABS provides information that the education services, especially, those providing on-line classes, seminars, meet-ups, and workshops in the fields of software design and technology research and development are conducive to experimental study, investigation, observation, testing and analysis," and that "[s]omeone who knows what Applicant's Class 41 education services are will understand the word LABS to convey information about them."[23] We agree that it does.

Applicant submits that

> the particular education services at issue do not have a connection to the definitions relied upon by the Examining Attorney either regarding the term "LABS" nor the definitions discussed in the Examining Attorney's denial of Applicant's Request for Reconsideration. Specifically,

---

[21] July 17, 2018 Office Action, TSDR 28-30.

[22] *Id.* at 46-48.

[23] 13 TTABVUE 12. The Examining Attorney also cites a non-precedential decision, *In re Global Mentoring Solutions, Inc.*, 2005 TTAB LEXIS 270 (June 30, 2005), wherein the Board found "LABS" to be merely descriptive of educational services. Although non-precedential decisions may be cited and considered for whatever persuasive value they may hold, they are not binding on the Board. *In re Society of Health and Physical Educators*, 127 USPQ2d 1584, 1587 n.7 (TTAB 2018). Nor are they a substitute for evidence needed to support a refusal. *In re Nett Designs*, 57 USPQ2d at 1566.

> Applicant's educational services are not descriptive of "a place equipped for experimental study in a science or for testing and analysis". There is no implication of a "place" for experimentation—these are not education services in the nature of traditional scientific subject matter such as biology or chemistry which would have an implied laboratory component as part of the services.[24]

However, Applicant ignores the additional definition for "LABS" provided with the Examining Attorney's denial of Applicant's request for reconsideration, defining "laboratories" as any place, situation, set of conditions, or the like, conducive to experimentation, investigation, observation. Applicant's on-line classes, seminars, meet-ups, and one-on-one mentoring derive from a place, situation or set of conditions for investigation and study regardless of the subject matter. Moreover, we need not confine ourselves to the Examining Attorney's definitions of record. A laboratory is also "[a] place for practice, observation, or testing,"[25] which clearly describes Applicant's educational services, provided virtually or otherwise. The third-party registrations of record corroborate this point. Therefore, we find "LABS" to be merely descriptive of Applicant's Class 41 educational services.

### D. Applicant's Class 42 Services

> **Providing temporary use of on-line non-downloadable software development tools; Collaborative computer programming for others in the nature of hackathons; Think tank services, namely, providing new ideas and concepts for web-based applications for others; Think tank services in the nature of technical consultation services in the field of smart cities technologies and digital governments technologies, industrial Internet of Things, enterprise mobility technologies, pervasive computing, machine intelligence, cognitive computing, digital optics technologies, mixed reality, block chain, biometric identity**

---

[24] 11 TTABVUE 10-11.

[25] https://www.ahdictionary.com/word/search.html?q=laboratory (accessed April 2, 2020).

**systems, hyperimaging, artificial vision, cyber defense, digital forensics, neuromorphic chips, neural analytics, quantum computing, and cryptography; Platform as a service (PAAS) services, namely, hosting software for use by others for use in research, design, and utilization of block chain software, robotic process automation, social networks, machine learning, Internet of Things, augmented reality, and advanced analytics; Computer services, namely, hosting on-line web facilities for others for organizing and conducting online meetings, gatherings, and interactive discussions**

In addition to relying on dictionary evidence, the Examining Attorney submitted seven third-party registrations for marks that include and disclaim the term "LABS," which he believes support the requirement for a disclaimer of "LABS" for Applicant's Class 42 services, including the following representative examples:

1. Reg. No. 4515641 for the mark CARNEY LABS ("LABS" disclaimed) for, inter alia, "Computer software consulting services; multimedia and audio-visual software consulting services, [] consultation services for developing computer systems, databases and applications; [] hosting the web-sites of others; [] application service provider (ASP) services featuring software for use in connection with online education program subscription service, education-related programs; computer services, namely, hosting on-line web facilities [], and providing temporary use of non-downloadable interactive educational computer programs to access existing educational programs in the field of employee training for work related tasks";

2. Reg. No. 4431504 for the mark THUNDERBOLT LABS ("LABS" disclaimed) for, inter alia, "Consulting services for others in the field of design, planning, and implementation project management of computer software, data analysis platforms and systems, and cloud computing systems"; and

3. Reg. No. 4536879 for the mark SCOUNDREL LABS ("LABS" disclaimed) for "Technology consulting services, namely, consulting in the field of computer software development".

The Examining Attorney argues that "'LABS' describes a characteristic or feature of Applicant's Class 42 services because it provides information that Applicant's consultation and think-tank services are conducive to experimental study,

investigation, observation, testing and analysis.[26] Applicant counters that the Examining Attorney improperly relies on third-party registrations for his refusal, and that there is no connection between "LABS" and online software, platform as a service (PAAS) services, or hosting of online web facilities.[27]

For the same reasons we found "LABS" to be merely descriptive of Applicant's Class 40 consultations, we also find it to be merely descriptive of Applicant's "think tank services in the nature of **technical** consultation services" in Class 42. Additionally, "LABS" is merely descriptive of Applicant's "collaborative computer programming for others in the nature of hackathons" because collaboration is akin to consultation (deliberating together) in a place, situation or set of conditions for investigation, observation or study. Applicant's think tank services of providing new ideas are also described by that definition. Moreover, Applicant concedes that "the services being offered–which of course are <u>products</u> offered via services–were **developed** in a lab."[28] We reach these findings based on the relevant dictionary evidence and our application of the plain meaning of "LABS" as it applies to Applicant's services, which are corroborated by the third-party registrations of record. Accordingly, we conclude that "LABS" is merely descriptive of at least some of Applicant's services in Class 42.

---

[26] 13 TTABVUE 13.

[27] 11 TTABVUE 12.

[28] *Id.*

## IV. Conclusion

In summary, we find that "LABS" is merely descriptive of all services in Classes 40 and 41, and a portion of the services in Classes 36 and 42. We need not find "LABS" to be merely descriptive of all services in Classes 36 and 42 to require a disclaimer for all of the services in those classes. Regarding descriptiveness refusals under Section 2(e)(1) of the Trademark Act, we apply the well-settled principle that a "[i]f a mark is descriptive of any of the services in a class for which registration is sought, it is proper to refuse registration as to the entire class." *Chamber of Commerce of the U.S.*, 102 USPQ2d at 1219; *In re Positec Grp. Ltd.*, 108 USPQ2d 1161, 1171 (TTAB 2013) ("If the Board affirms a refusal of an entire class based on the descriptiveness of the mark for one or more goods in the class, then the entire class will fail."). We hold that the same principle applies to disclaimer refusals.[29]

**Decision:** The refusal to register Applicant's INFINITY LABS mark based on the requirement, made under Trademark Act § 6(a), for a disclaimer of the term "LABS" in Classes 36, 40, 41 and 42 is affirmed.

However, if Applicant submits a disclaimer of "LABS" to the Board within thirty days, the requirement for the disclaimer will have been met and the application will proceed. Trademark Rule 2.142(g), 37 C.F.R. § 2.142(g); TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE § 1218 (2019).[30] The disclaimer should read

---

[29] Our holding herein would not prevent a future applicant from dividing its application pursuant to Trademark Rule 2.87, 37 C.F.R. § 2.87, and separately appealing a disclaimer requirement for other goods or services within a single class.

[30] An applicant's recourse from a decision by the Board is generally limited to the filing of a request for reconsideration and/or appealing to the Court of Appeals for the Federal Circuit

as follows: "No claim is made to the exclusive right to use LABS apart from the mark as shown."

---

or by way of a civil action filed with a federal district court. Entry of disclaimer is one of the two limited exceptions available for reopening an application (the other being an order by the Director following the granting of a petition to reopen an application upon a showing of sufficient cause for consideration of any matter not already adjudicated). Trademark Rule 2.142(g), 37 C.F.R. § 2.142(g). However, the time for filing an appeal of the Board's decision is not tolled.